STATE of Wisconsin, Plaintiff-Respondent,

v.

Peter J. MC MASTER, Defendant-Appellant.†

Court of Appeals

*No. 95–1159–CR. Submitted on briefs October 17, 1995.—Decided November 8, 1995.*

(Also reported in 543 N.W.2d 499.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel P. Fay* and *Joseph M. Amidon* of *Daniel P. Fay, S.C.* of Pewaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J.   Peter J. McMaster appeals from a judgment of the trial court where he was convicted of operating a motor vehicle with a prohibited blood alcohol concentration, contrary to § 346.63(1)(b), STATS. We conclude that criminal prosecution for operating a motor vehicle with a prohibited blood alcohol concentration subsequent to the administrative suspension of driving privileges does not violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Accordingly, we affirm.

According to the criminal complaint, McMaster was charged with operating while under the influence of intoxicants, contrary to § 346.63(1)(a), STATS., and with a prohibited blood alcohol concentration, contrary to § 346.63(1)(b). A blood test was performed indicating a .178 percent of alcohol in McMaster's blood. McMaster's license was suspended under § 343.305, STATS., for six months because his blood test revealed a prohibited alcohol concentration. McMaster had been previously convicted of an implied consent violation and/or operating a motor vehicle while under the influence of intoxicants or having a prohibited alcohol concentration.

McMaster filed a motion to dismiss, arguing that the Double Jeopardy Clause prohibited the criminal proceedings against him because the administrative suspension of his operating privileges operated as a punishment in a separate proceeding for the same offense charged in the criminal actions. The trial court denied McMaster's motion to dismiss, concluding that a § 343.305, STATS., administrative suspension of driving privileges does not constitute a punishment for double jeopardy purposes. McMaster pled guilty to one

count of operating with a prohibited alcohol concentration. The charge of operating while intoxicated was dismissed. McMaster appeals.

We agree with McMaster's framing of the issue:

> Does the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibit the criminal prosecution of the defendant for operating a motor vehicle while under the influence of alcohol, and of operating a motor vehicle with a blood alcohol concentration greater tha[n] 0.10%, contrary to § 346.63 and § 346.65, Wis. Stats., subsequent to the administrative suspension of his driving privileges under § 343.305(8) Wisconsin Statutes?

McMaster argues that the administrative suspension of a defendant's driving privileges operates as a punishment in a separate proceeding for the same offense charged in the criminal actions; therefore, any attempt to further punish a defendant's activity in the criminal proceeding is in violation of the defendant's rights against double jeopardy.

██

Whether an administrative suspension and the subsequent criminal prosecution for operating with a prohibited alcohol concentration constitute multiple punishment for the same crime is a question which requires the application of constitutional principles to the facts. We will independently determine "from the facts as found by the trial court whether any time-honored constitutional principles were offended" in the present case. *See State v. Pheil*, 152 Wis. 2d 523, 529, 449 N.W.2d 858, 861 (Ct. App. 1989) (quoted source omitted).

The Double Jeopardy Clause of the Fifth Amendment has been interpreted to include three separate constitutional protections: (1) protection against a second prosecution for the same offense after an acquittal, (2) protection against a second prosecution for the same offense after conviction and (3) protection against multiple punishment for the same offense. *State v. Kurzawa*, 180 Wis. 2d 502, 515, 509 N.W.2d 712, 717, *cert. denied*, 114 S. Ct. 2712 (1994). Here, we are dealing with the third protection—multiple punishment for the same offense.

In *United States v. Halper*, 490 U.S. 435, 446 (1989), the Court addressed the issue of "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause." The Court concluded that in making this assessment, "the labels 'criminal' and 'civil' are not of paramount importance." *Id.* at 447. The Court stated that civil proceedings may advance punitive as well as remedial goals. *Id.* "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." *Id.* at 448. The Court stated that in other contexts, punishment serves the twin aims of retribution and deterrence. *Id.*

We must determine whether administrative license suspension serves remedial or punitive goals.[1]

---

[1] In doing so, we recognize that *United States v. Halper*, 490 U.S. 435 (1989), aids this court in its analysis of the issue but does not directly control our decision here. Unlike in the present case where the issue is administrative suspension of operating privileges, *Halper* involved a monetary civil penalty for each of the defendant's violations of the civil False Claims Act. *Id.* at 438.

As the United States Supreme Court stated in *Department of Revenue v. Kurth Ranch*, 114 S. Ct. 1937, 1946 (1994), "*Halper* recognized that '[t]his constitutional protection is intrinsically personal,' and that only 'the character of the actual sanctions' can substantiate a possible double jeopardy violation."

In its decision, the trial court expressed a question concerning the language in *Austin v. United States*, 113 S. Ct. 2801 (1993), and the language in *Kurth Ranch*. In *Austin*, the Court stated:

> We, however, must determine that [a forfeiture] can only be explained as serving in part to punish. We said in Halper that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

*Austin*, 113 S. Ct. at 2806 (quoted source omitted). From this language, the question arises whether a sanction that primarily serves a nonpunitive goal but may have a secondary deterrent purpose may still be characterized as remedial.

The language in *Kurth* leads us to conclude that a sanction is not necessarily characterized as punitive simply because it may have some deterrent or retributive purpose. As the Court stated in *Kurth*:

> We begin by noting that neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment. In this case, although those factors are not dispositive, they are at least consistent with a punitive character. . . . [W]hile a high tax rate and deterrent purpose lend support to the characterization of the drug tax as punishment, these features, in and of

themselves, do not necessarily render the tax punitive.

*Kurth*, 114 S. Ct. at 1946-47. The language in *State v. Killebrew*, 115 Wis. 2d 243, 340 N.W.2d 470 (1983), a Wisconsin case decided prior to the relevant United States Supreme Court opinions cited here, is also supportive of our conclusion: "Governmental action is punishment under the double jeopardy clause if its principal purpose is punishment, retribution or deterrence. When the principal purpose is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment." *Id.* at 251, 340 N.W.2d at 475.

We turn to the language of § 343.305(7), STATS., which provides in relevant part:

> CHEMICAL TEST; ADMINISTRATIVE SUSPENSION. (a) If a person submits to chemical testing administered in accordance with this section and any test results indicate a prohibited alcohol concentration, the law enforcement officer shall report the results to the department and take possession of the person's license and forward it to the department. The person's operating privilege is administratively suspended for 6 months.

The current provisions of § 343.305(7) and (8), were created by 1987 Wis. Act 3, § 29 and amended by 1989 Wis. Act 7.

We conclude that the purpose of § 343.305(7) and (8), STATS., is remedial in nature because it is intended to keep drunken drivers off of the roads. While the suspension obviously affects the driver, the intent of the statute is not to punish. The purpose of the implied consent law is to protect innocent drivers and pedestrians from drunken drivers on the highways and also to facilitate the gathering of evidence against those driv-

ers. See *State v. Neitzel*, 95 Wis. 2d 191, 193, 289 N.W.2d 828, 830 (1980) (stating that "the clear policy of the statute is to facilitate the identification of drunken drivers and their removal from the highways").

We agree with the State that *State v. Nordness*, 128 Wis. 2d 15, 33-34, 381 N.W.2d 300, 307 (1986), expresses the general legislative purpose:

> Drunk driving is indiscriminate in the personal tragedy of death, injury, and suffering it levies on its victims. It may transform an innocent user of a highway into a victim at any time—with no advance notice and no opportunity to be heard. It is a tragedy where the intoxicated driver and the victim are often unwittingly the same person.
>
> It is also a scourge on society: drunk driving exacts a heavy toll in terms of increased health care and insurance costs, diminished economic resources, and lost worker productivity. It is an affliction which produces no offsetting human or economic benefits; it engenders no positive human or economic incentive. It destroys and demoralizes personal lives and shocks society's conscience. It has no legitimate place in our society.

Although § 343.305(7) and (8), STATS., were not enacted at the time *Nordness* and *Neitzel* were released, it is clear that the purpose of these provisions is to insure the public's safety.[2]

---

[2] McMaster cites to the Laws of 1981, ch. 20, § 2051(13), as amended by Laws of 1981, ch. 184, § 10, to illustrate the retributive and deterrent purpose of § 343.305, STATS. The Laws provide:

> OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF INTOXICANT OR CONTROLLED SUBSTANCE OR WHILE HAVING A BLOOD ALCOHOL CONCENTRATION OF 0.1% OR MORE.
>
> (a) The legislature finds that:

■ We agree with the trial court's reasoning that the statute does not serve the goal of punishment because no fines or jail time are imposed; the statute allows for immediate occupational licensing under § 343.305(8)(d), STATS.; and a defendant is given credit for the suspension against a later suspension or revocation arising out of the incident pursuant to § 346.63, STATS. These examples illustrate the legislature's desire to protect public safety without placing an onerous burden upon the person whose license has been suspended. The ultimate result is inconvenience to that driver. However, there is no substantial punitive impact.

---

1. Operation of motor vehicles by persons who are under the influence of an intoxicant or have a blood alcohol concentration of 0.1% or more seriously threatens the public safety and welfare.

2. Persons who operate motor vehicles while under the influence of an intoxicant or having a blood alcohol concentration of 0.1% or more do so in disregard of the safety and welfare of both themselves and other members of the driving public and of the laws of this state.

3. Penalties are an important and necessary element in deterring the operation of motor vehicles by those persons.

. . . .

(b) The legislature intends by passage of this act:

1. To provide maximum safety for all users of the highways of this state.

2. To provide penalties sufficient to deter the operation of motor vehicles by persons who are intoxicated or have a blood alcohol concentration of 0.1% or more.

3. To deny the privileges of operating motor vehicles to persons who have operated their motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more.

4. To encourage the vigorous prosecution of persons who operate motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more.

We conclude that while the statute may have a deterrent aim, the primary purpose is nonpunitive.

McMaster asserts that simply because an administrative suspension's goal is to keep inebriated drivers off the road at a time earlier than conviction, this does not mean that the goal is remedial rather than punitive. To illustrate, McMaster notes that a defendant who is convicted of a crime is often sent to prison. The goal of prison is to keep the defendant away from the community for the community's safety. But McMaster argues that the result still emanates from a punitive action and is therefore a punitive sanction. McMaster analogizes the prison situation with the goal of administrative suspension and claims that the goal is therefore punitive rather than remedial.

We disagree. While it is true that sending a convicted defendant to prison serves a punitive goal of taking away that person's liberty, it also serves a remedial goal of protecting society. Simply because criminal actions are considered punitive to the defendant does not mean that they are punitive actions from the point of view of the community. To be sure, one of the purposes of our criminal justice system is to punish offenders. But another purpose is remedial—it remedies the situation where a violator of our criminal laws is left out on the streets, thereby endangering the community's safety. By sending the convicted defendant to prison, the problem is remedied. Thus, prison has both punitory and remedial aspects. It is punitory to the defendant and remedial to the community.

Likewise, while the act of keeping a violator of our intoxicated driving statutes is no doubt punitive in that the driver is subject to a loss of driving privilege, it is largely remedial because it keeps the community safe from the driver. The purpose of the administrative suspension has been declared by our courts to be driven by this remedial goal. Therefore, it is incorrect to say that

the goal is purely a punitive one or even that it is largely punitive. The simple truth is that the goal is to remedy the situation where inebriated drivers are still allowed to ply the roadways to the potential harm of our society.

McMaster argues that *Kurth Ranch* limited *Halper*'s analysis distinguishing between remedial and punitive intent. McMaster asserts that *Kurth Ranch* limits *Halper* to situations involving civil monetary penalties. He also states: "*Kurth* stands for the proposition that consequences that attend only conduct prohibited by law is punitive." Thus, according to his reasoning, administrative suspension of driving privileges should be considered punitive because the administrative suspension only occurs upon a showing of criminal conduct.

In *Kurth Ranch*, the issue was whether a tax on the possession of illegal drugs assessed after the State had imposed a criminal penalty for the same conduct violated the constitutional prohibition against successive punishments for the same offense. *Kurth Ranch*, 114 S. Ct. at 1941. The court stated: "In *Halper* we considered whether and under what circumstances a civil penalty may constitute punishment for the purpose of double jeopardy analysis. Our answer to that question does not decide the different question whether Montana's tax should be characterized as punishment." *Id.* at 1944 (quoted source omitted). The Court held that *Halper* does not consider whether a tax may be characterized as punitive. *Id.*

We conclude that *Kurth Ranch* is limited to situations in which taxes are imposed upon illegal activity. We agree with the State that the "defendant is plainly wrong in asserting that the license suspension sanction

is punitive primarily because it applies only to criminal conduct." The language in *Kurth Ranch* cannot be read to require such an analysis in a case involving administrative license suspension. We conclude that criminal prosecution for operating a motor vehicle with a prohibited blood alcohol concentration subsequent to the administrative suspension of the driver's operating privileges does not constitute multiple punishment and therefore does not violate the Double Jeopardy Clause.

*By the Court.*—Judgment affirmed.