STATE of Wisconsin, Plaintiff-Respondent,

v.

Peter J. MCMASTER, Defendant-Appellant-Petitioner.

Supreme Court

*No. 95–1159–CR. Oral argument October 31, 1996.—Decided December 13, 1996.*

(Also reported in 556 N.W.2d 673.)

For the defendant-appellant-petitioner there were briefs by *Daniel P. Fay, Joseph M. Amidon* and *Law Firm of Daniel P. Fay, S.C.*, Pewaukee and oral argument by *Joseph M. Amidon* and *Daniel P. Fay*.

For the plaintiff-respondent the cause was argued by *Maureen McGlynn Flanagan*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

DONALD W. STEINMETZ, J. The issue in this case is whether the Double Jeopardy Clause of the

32

Fifth Amendment to the United States Constitution prohibits the criminal prosecution of the defendant for violations of Wis. Stat. §§ 346.63[1] and 346.65,[2] subsequent to the administrative suspension of his driving privileges under Wis. Stat. § 343.305(7) and (8).[3] We

[1] McMaster was charged with a violation of Wis. Stat. § 346.63(1)(a) and (b). Wis. Stat. § 346.63 provides, in relevant part, as follows:

(1) No person may drive or operate a motor vehicle while:

(a) Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving; or

(b) The person has a prohibited alcohol concentration.

[2] McMaster was charged under this section because he had previous convictions under Wis. Stat. § 346.63 in the previous five years. Wisconsin Statute § 346.65 provides, in relevant part, as follows:

**Penalty for violating sections 346.62 to 346.64.**

. . . .

(2) Any person violating s. 346.63 (1):

(a) Shall forfeit not less than $150 nor more than $300, except as provided in pars. (b) to (e).

(b) Shall be fined not less than $300 nor more than $1,000 and imprisoned for not less than 5 days nor more than 6 months if the total number of suspensions, revocations and convictions counted under s. 343.307 (1) equals 2 in a 5-year period, except that suspensions, revocations or convictions arising out of the same incident or occurrence shall be counted as one.

[3] Wis. Stat. § 343.305(7) and (8) provides, in relevant part:

(7) CHEMICAL TEST; ADMINISTRATIVE SUSPENSION. (a) If a person submits to chemical testing administered in accordance with this section and any test results indicate a prohibited alcohol concentration, the law enforcement officer shall report the results to the department and take possession of the person's license and forward it to the department. The person's operating privilege is administratively suspended for 6 months.

hold that the criminal prosecution of the defendant after the administrative suspension of his driving privileges is permitted because we find that the primary purpose of Wis. Stat. § 343.305 is remedial.

There is no dispute over the facts in this case. On July 16, 1994, Peter McMaster received a citation for operating while under the influence of an intoxicant in violation of Wis. Stat. §§ 346.63(1)(a) and 346.65. McMaster had previous convictions for violations of the drunk driving statutes and was therefore charged with a criminal offense. A blood alcohol test administered after his arrest showed an ethanol concentration of 0.178 percent in McMaster's blood. Because his blood alcohol concentration was above the prohibited level,

(b) If a person who was driving or operating or on duty time with respect to a commercial motor vehicle submits to chemical testing administered in accordance with this section and any test results indicate any measured alcohol concentration above 0.0, the law enforcement officer may take possession of the person's license and retain the license for 24 hours. The person may reclaim a seized license in person or request return of the license by mail. The law enforcement officer shall issue a citation for violation of s. 346.63 (7) (a) 1., issue citations for such other violations as may apply and issue an out-of-service order to the person for the 24 hours after the testing, and report both the out-of-service order and the test results to the department in the manner prescribed by the department. If the person is a nonresident, the department shall report issuance of the out-of-service order to the driver licensing agency in the person's home jurisdiction.

(8) CHEMICAL TEST; ADMINISTRATIVE SUSPENSION; ADMINISTRATIVE AND JUDICIAL REVIEW. (a) The law enforcement officer shall notify the person of the administrative suspension under sub. (7) (a). The notice shall advise the person that his or her operating privilege will be administratively suspended and that he or she has the right to obtain administrative and judicial review under this subsection. This notice of administrative suspension serves as a 30-day temporary license. An administrative suspension under sub. (7) (a) becomes effective at the time the 30-day temporary license expires. The officer shall submit or mail a copy of the notice to the department.

34

McMaster's driving privileges were administratively suspended for six months in accordance with Wis. Stat. § 343.305(7). A citation was also issued charging McMaster with a violation of Wis. Stat. § 346.63(1)(a) and (b).

After his initial appearance before the trial court, McMaster filed a motion to dismiss, claiming that the criminal prosecution under Wis. Stat. § 346.63 was barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[4] McMaster argued that because the State had already punished him for driving while intoxicated by revoking his driving privileges, he could not also be criminally prosecuted for the same offense. The circuit court for Waukesha County, Judge J. Mac Davis, denied the motion to dismiss based on its finding that the purpose of Wis. Stat. § 343.305 is remedial and therefore does not constitute punishment for double jeopardy purposes. McMaster was found guilty of operating a motor vehicle with a blood alcohol content in excess of 0.10 percent contrary to Wis. Stat. § 346.63(1)(b) and sentenced to 90 days in the county jail.

McMaster appealed to the court of appeals. The court of appeals affirmed the circuit court judgment of conviction. In its decision, the court found that Wis. Stat. § 343.305(7) and (8) is remedial in nature, noting that the fact that the statute may also serve some deterrent and punitive goals does not make its primary purpose one of punishment. *State v. McMaster*, 198 Wis. 2d 542, 543 N.W.2d 499 (Ct. App. 1995). Despite McMaster's urging, the court declined to consider this case under the United States Supreme Court case

---

[4] The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V.

*Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767 (1994), because the holding in *Kurth Ranch* is limited to situations where taxes are imposed on illegal activities. Instead, the court found that the statute should be considered under *United States v. Halper*, 490 U.S. 435 (1989). Thus the court of appeals held that under *Halper*, Wis. Stat. § 343.305(7) and (8) is primarily remedial and does not constitute punishment for a double jeopardy claim.

■

This case presents a question of constitutional interpretation and a determination of statutory purpose. Whether a statute is considered punishment is a finding of constitutional fact and is an issue of law. *State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984). Therefore, this court may decide the issue independently of the circuit court or the court of appeals. *State v. Thierfelder*, 174 Wis. 2d 213, 218, 495 N.W.2d 669 (1993).

■

A party challenging a statute must show it to be unconstitutional beyond a reasonable doubt. *State v. Carpenter*, 197 Wis. 2d 252, 263, 541 N.W.2d 105 (1995). There is a strong presumption in favor of the constitutionality of the statute. *See id.* Therefore, McMaster bears "the burden of overcoming the strong presumption that [Wis. Stat. § 343.305(7) and (8)] does not subject a person to multiple punishment." *Id.* at 264. A careful analysis of the statute itself in light of controlling precedent is necessary to determine if the challenged statute is in fact violative of the Double Jeopardy Clause.

Historically, the United States Supreme Court has held that civil sanctions imposed in separate proceedings from a criminal prosecution stemming from the

36

same incident do not violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. For example, in *Various Items of Personal Property v. United States*, 282 U.S. 577 (1931), the Waterloo Distilling Corporation was ordered to forfeit a distillery, warehouse, and denaturing plant on the ground that the corporation conducted its business in violation of federal law. The corporation had been convicted of criminal violations prior to the initiation of the forfeiture proceeding and argued that the forfeiture action violated the Double Jeopardy Clause. Basing its decision in part on long-standing common law principles, the Court unanimously held that the clause was inapplicable to civil forfeiture actions. The Court did not again consider a double jeopardy case involving civil forfeiture until 40 years later, when it reaffirmed the rule of *Various Items*. In *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972) (per curiam), the Court upheld a civil forfeiture of jewels following an acquittal on a smuggling charge against a double jeopardy challenge. In *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984), the Court unanimously upheld the civil forfeiture of firearms following the acquittal of the gun owner on a charge of the illegal sale of firearms. The Court stated that "[u]nless the forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable." *89 Firearms*, 465 U.S. at 362.

The Court in *89 Firearms* concluded that whether a statute is criminal and punitive, or civil and remedial, is a matter of statutory interpretation. As such, the Court adopted a two-prong test established in *United States v. Ward*, 448 U.S. 242, 248 (1980), to aid courts in the exercise of statutory interpretation:

37

'Our inquiry in this regard has traditionally pro-
ceeded on two levels. First, we have set out to
determine whether Congress, in establishing the
penalizing mechanism, indicated either expressly
or impliedly a preference for one label or the other.
Second, where Congress has indicated an intention
to establish a civil penalty, we have inquired fur-
ther whether the statutory scheme was so punitive
either in purpose or effect as to negate that
intention.'

*89 Firearms*, 465 U.S. at 362-63 (citations omitted).
The theme in all of these cases is consistent: forfeitures
of this type are primarily remedial sanctions that do
not constitute punishment for purposes of a double
jeopardy analysis.

Despite the consistent trend in *Various Items* and
its progeny, three United States Supreme Court cases
in recent years have created some confusion in the area
of double jeopardy jurisprudence. In 1989, the
Supreme Court decided *United States v. Halper*, 490
U.S. 435 (1989). *Halper* involved a situation where a
man was convicted of 65 counts of violating the crimi-
nal false-claims statute involving $585 actual loss.
After he was sentenced in the criminal proceeding, the
government brought an action under the civil False
Claims Act, exposing Halper to a potential liability of
$130,000. Because the Court found that the penalty
was "entirely unrelated" to the actual damages suf-
fered, it held that the civil penalty was a "second
punishment" in violation of the Double Jeopardy
Clause. *Halper*, 490 U.S. at 447-49. The Court noted
that "the labels 'criminal' and 'civil' are not of para-
mount importance," for "a civil as well as a criminal
sanction constitutes punishment when the sanction as

38

applied in the individual case serves the goals of punishment." *Id.*

The *Halper* decision seemed to indicate the beginning of a changing tide in modern jurisprudence, particularly with respect to the civil/criminal distinction. It was followed by the Court's decision in *Austin v. United States*, 509 U.S. 602 (1993). In *Austin*, the government initiated civil forfeiture proceedings against a body shop and a mobile home after the owner pleaded guilty to a drug offense. Relying on the distinction in *Halper* between punitive and remedial goals, the Court held that the Eighth Amendment's Excessive Fines Clause applies to in rem civil forfeiture proceedings and, because the forfeiture at issue did not serve solely a remedial purpose, it was invalidated by the Court. *Id.* at 622.

The case of *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767 (1994), shed more confusion on the proper means of analyzing statutes to determine if they are punitive in nature. In *Kurth Ranch*, the Court concluded that the imposition of a drug tax on the parties after their criminal conviction for drug offenses was, in this case, a violation of double jeopardy because the tax could fairly be characterized as punishment. The Court cited to *Halper*, but rejected the *Halper* mode of analysis to determine whether a statute is remedial or punitive. *Kurth Ranch*, 511 U.S. at —, 114 S.Ct. at 1948. Instead, the Court decided that the imposition of the tax after the criminal prosecution violates double jeopardy because it applies only to an illegal activity and, in fact, is imposed only after the arrest of a person for an illegal activity. *Kurth Ranch*, 511 U.S. at—, 114 S.Ct. at 1947.

There has been some confusion as to whether *Halper*, *Austin*, and *Kurth Ranch* represent a shifting

tide in double jeopardy jurisprudence, and under what situations they will apply. Fortunately, the United States Supreme Court has cleared up this confusion with its recent decision in *Ursery v. United States*, — U.S. —, 116 S.Ct. 2135 (1996). *Ursery* involved forfeiture proceedings against property allegedly used to manufacture marijuana which were started after the criminal prosecution of the defendant. The appellate court decided that under *Halper* and *Austin* civil forfeitures could categorically be deemed to constitute punishment. The Supreme Court reversed, holding that in rem civil forfeitures are neither "punishment" nor criminal for the purposes of the Double Jeopardy Clause. Relying on *Various Items, One Lot Cut Emerald Stones*, and *89 Firearms*, the Court reasoned that it has had a history of viewing in rem forfeitures subsequent to a criminal proceeding as not violative of double jeopardy because they do not impose punishment.

*Ursery* analyzes the defendant's double jeopardy claim under the two-prong *Ward* test advocated by the Court in *89 Firearms*. This decision in *Ursery* adds another tool for analyzing the nature of a statute. Perhaps more importantly, however, *Ursery* also clarifies and limits the holdings in *Halper, Austin*, and *Kurth Ranch*. The Court notes that neither *Halper, Austin*, nor *Kurth Ranch* was meant to overrule the well-established cases involving civil forfeitures. In fact, the Court explains that each of those decisions must be limited in its holding:

> In sum, nothing in *Halper, Kurth Ranch*, or *Austin*, purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause. Con-

40

gress long has authorized the Government to bring parallel criminal proceedings and civil forfeiture proceedings, and this Court consistently has found civil forfeitures not to constitute punishment under the Double Jeopardy Clause. It would have been quite remarkable for this Court both to have held unconstitutional a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so. *Halper dealt with in personam civil penalties under the Double Jeopardy Clause; Kurth Ranch with a tax proceeding under the Double Jeopardy Clause; and Austin with civil forfeitures under the Excessive Fines Clause.* None of those cases dealt with the subject of this case: in rem civil forfeitures for purposes of the Double Jeopardy Clause.

*Ursery*, — U.S. —, 116 S.Ct. at 2147 (emphasis added).

The situation in the case at bar is not identical to that in any of the cited Supreme Court cases. Wisconsin Statutes § 343.305 does not fall squarely into any of the categories set out in *Ursery*: it is not a civil penalty as in *Halper*; it is not a tax as in *Kurth Ranch*; it has nothing to do with the Excessive Fines Clause as in *Austin*; and it is not quite a civil forfeiture as in *Ursery*. However, Wis. Stat. § 343.305(7) and (8) is most similar in character and in purpose to an in rem civil forfeiture "designed primarily to confiscate property used in violation of the law" to protect society from harm. *See Ursery*, — U.S. —, 116 S. Ct. at 2145. Consequently, this court will proceed under the two-prong *Ward* analysis as advocated in *89 Firearms* and *Ursery* to determine both the legislative intent and the punitive or remedial nature of the statute. An exploration of the statute itself and its history in light of Wisconsin case law is instructive in this regard.

41

Whether a criminal prosecution for drunk driving offenses after the administrative suspension of driving privileges violates the Double Jeopardy Clause is an issue of first impression in Wisconsin. However, this court has had the opportunity to explore similar challenges to other statutes under the Double Jeopardy Clause. Most recently, this court faced a double jeopardy challenge to civil commitments under Wisconsin's Sexually Violent Person Commitments statute in *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995). In *Carpenter*, the court held that double jeopardy is not violated where the parties were convicted of sex offenses and later faced civil commitment proceedings, because the principal purposes of the commitment were to protect the public and to treat the offenders.

The *Carpenter* court adopted the standard for determining whether the Double Jeopardy Clause has been violated from *State v. Killebrew*, 115 Wis. 2d 243, 340 N.W.2d 470 (1983). In *Killebrew*, the court held that administrative discipline for an escape from prison does not preclude criminal prosecution for the same incident because the administrative action does not constitute punishment. The court noted that "[g]overnmental action is punishment under the double jeopardy clause if its principal purpose is punishment, retribution or deterrence. When the principal purpose is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment."[5] *Id.* at 251. Applying this standard, the court in

---

[5] The ultimate holding of *State v. Killebrew*, 115 Wis. 2d 243, 340 N.W.2d 470 (1983), was superseded by a statutory change eliminating "statutory good time." *See State v. Fonder*, 162 Wis. 2d 591, 595, 469 N.W.2d 922 (Ct. App. 1991). However, the "principal purpose" test applied in *Killebrew* has not been affected.

*Carpenter* explains that "a civil sanction is violative of the Double Jeopardy Clause if it 'may not fairly be characterized as remedial, but only as a deterrent or retribution.' " *Carpenter*, 197 Wis. 2d at 264, quoting *Halper*, 490 U.S. at 448-49.

While it is accepted in Wisconsin that civil sanctions can constitute punishment, the analysis centers on whether the sanction is " 'so extreme and so divorced from the Government's damages and expenses as to constitute punishment' to which double jeopardy can attach." *State v. Thierfelder*, 174 Wis. 2d 213, 228, 495 N.W.2d 669 (1993), quoting *Halper*, 490 U.S. at 442. In *Thierfelder*, this court held that the Double Jeopardy Clause did not bar criminal prosecution for two offenses involving intoxicated use of a motor vehicle subsequent to a civil judgment in a municipal traffic ordinance action arising from the same incident. The court explained that the defendant failed to demonstrate that the civil sanctions could be characterized as criminal penalties. *Thierfelder*, 174 Wis. 2d at 229.

██

Perhaps the best way to determine whether a statute is criminal and punitive, or civil and remedial, is through an analysis under the two-prong *Ward* test as advocated by the Supreme Court in *89 Firearms* and *Ursery*. Even before *Ursery* was decided, this court adopted the *Ward* test to analyze double jeopardy challenges. *See Carpenter*, 197 Wis. 2d at 264; *State v. Kramsvogel*, 124 Wis. 2d 101, 114, 369 N.W.2d 145 (1985), *cert. denied*, 474 U.S. 901 (1985). Applying this test to the case at hand, this court must consider 1) whether the legislature intended Wis. Stat. § 343.305 to be a remedial civil sanction, and 2) whether there are aspects of Wis. Stat. § 343.305 that are so punitive

either in effect or nature as to render the overall purpose to be one of punishment.

In applying the first prong of the test to Wis. Stat. § 343.305, this court may consider the intent of the legislature, the legislative history of the statute, and the historical treatment of the statute by the courts. *See Ursery*, — U.S. —, 116 S. Ct. 2135. While there is no express legislative intent contained within the statute itself, the history of the statute clearly indicates the legislature's intent that Wis. Stat. § 343.305 serve as a remedial civil sanction. For example, when administrative revocation was first proposed, the Department of Transportation was directed to study the feasibility and the likely results of administrative license revocation or suspension. Comparing the proposed Wisconsin law to the similar, existing Minnesota law, the report noted that in the first six years of the implementation of the program, alcohol-related revocations increased from 14,000 to 36,000, and traffic deaths decreased from 3.00 to 1.98 per million miles traveled. Wisconsin Department of Transportation, *Administrative revocation of drunk drivers in Wisconsin: a legislative report*, at 5 (1985). The report asserts that "there may be other factors that contributed to these documented improvements in highway safety, but administrative revocation was definitely a positive factor and played a significant role." *Id.* The report later asserts that many other states have experienced improvements in highway safety after adopting administrative revocation programs, pointing out that Iowa had a 15 percent decrease in nighttime drunk driving fatalities, and Oklahoma saw a 20 percent decrease in fatalities and a 41 percent decrease in all drinking-related incidents. *Id.* at 7-8. Finally, the report explains that other states have experienced increased levels of drunk driving

44

enforcement without correlating increases in law enforcement personnel as a result of their administrative revocation programs. The report states that "[t]his increase resulted from a general feeling among law enforcement officers that their efforts in enforcing the OWI law had a direct, visible and positive impact on highway safety." *Id.* at 9.

The results of the DOT report clearly indicate that the passage of Wis. Stat. § 343.305 was aimed toward promoting public highway safety, but further support of this goal can be found in the legislative drafting file for this statute. In a letter found in the drafting file written on January 12, 1987, a defense attorney admits that the new drunk driving laws such as those contained in Wis. Stat. § 343.305 serve the important remedial goal of protecting public safety. The author writes that "[a]lthough we already represent persons charged with drunk driving, we have generally supported these changes as necessary for public safety." Letter from Steven P. Doyle, Attorney at Law, to John Medinger (January 12, 1987) (found in drafting file for 1987 Wis. Act 3). The letter further notes that the "law is good in theory because it gets drunk drivers off the road." *Id.* The statute was intended by the legislature to serve as a civil remedial sanction to protect innocent people on the highways. A February 9, 1987, analysis of the bill just four days after it was passed indicates that the administrative license suspension will be effective because it accomplishes the same purpose as the former method of pretrial loss by judicial review "without the court backlog and delay problems." Memorandum from the Assistant General Counsel for the Wisconsin Department of Transportation to the Act 337 Technical Committee Members (February 9, 1987) (found in drafting file for 1987 Wis. Act 3).

45

Finally, we conclude that the legislature intended Wis. Stat. § 343.305 as a civil remedial sanction because of the historical treatment of the statute by this court. This court has noted in several cases that the policy behind Wis. Stat. § 343.305 is "to facilitate the identification of drunken drivers and their removal from the highways." *State v. Neitzel*, 95 Wis. 2d 191, 193, 289 N.W.2d 828 (1980). *Accord State v. Nordness*, 128 Wis. 2d 15, 27, n.5, 381 N.W.2d 300 (1986). This court also agreed that the statute serves this remedial goal in *State v. Brooks*, 113 Wis. 2d 347, 359, 335 N.W.2d 354 (1983), concluding that the general purpose behind laws relating to operating while under the influence of intoxicants is "to get drunk drivers off the road as expeditiously as possible and with as little possible disruption of the court's calendar." *Id.* at 359. Although these cases were all decided prior to the passage of the administrative license suspension provisions of Wis. Stat. § 343.305, they speak to the overarching goal of all drunk driving laws in this state. Considering the legislative history of the statute and its historical treatment by this court, we conclude that the legislature intended the administrative license suspension, Wis. Stat. § 343.305(7) and (8), to serve as a civil remedial sanction.

Despite the obvious remedial purpose of the statute, this court would be remiss to pretend that the administrative license suspension does not serve some deterrent effects. However, the test is not whether the statute serves some deterrent or punitive goals; rather, the inquiry involves determining whether the statute is so punitive in nature or effect as to render it punishment for purposes of the Double Jeopardy Clause. *See Ursery*, — U.S. —, 116 S. Ct. at 2147. McMaster argues

46

that the suspension of his driving privileges is extremely punitive in nature. Given the nature of the problem addressed by Wis. Stat. § 343.305, drunk driving, the interest the government has in removing the driver from the road is compelling. The fact that the administrative license suspension also inconveniences the defendant and might act as a deterrent is inconsequential to the overall purpose of public safety.

In *State v. Schulz*, 100 Wis. 2d 329, 302 N.W.2d 59 (Ct. App. 1981), the court held that a finding of guilt for violating a county ordinance does not bar criminal prosecution on the homicide by intoxicated user charge. The court explained that Schulz could lose his license, be forced to attend driver safety school, and be imprisoned for failure to pay his forfeiture, all in addition to the original forfeiture. However, "[t]hese penalties are not so punitive in purpose or effect to negate the intent of the legislature." *Id.* at 331. The court proceeds to state that "[l]oss of license. . .is not so punitive as to cause us to conclude that jeopardy should attach." *Id.*

██

The statute serves to protect the safety of all who travel on Wisconsin's public streets and highways. It is not intended primarily as a punishment, and its effects are not so punitive as to render it as such.[6] There are

---

[6] Cases decided in other jurisdictions in recent years overwhelmingly have recognized that administrative license suspension following a drunk driving arrest or refusal to submit to required testing is primarily remedial in purpose and effect so that a subsequent criminal prosecution does not violate double jeopardy. *See Allen v. Attorney General of Maine*, 80 F.3d 569, 577 (1st Cir. 1996) (administrative license suspension under Maine law "represents a reasonable effort to protect the public from motorists who have demonstrated a dangerous pro-

adequate procedural guidelines in place to ensure that the defendant will not face undue "punishment." After a person's license has been administratively suspended, he or she is entitled to an administrative hearing to review the suspension within 30 days after the person files a notice with the Department of Transportation. Wis. Stat. § 343.305(8)(b). Additionally, "a person aggrieved by the determination of the hearing examiner may have the determination reviewed by the court hearing the action" related to the suspension.

pensity to drink before they drive;" because sanction is primarily remedial, subsequent criminal prosecution is not barred on double jeopardy grounds). *Accord United States v. Imngren,* — F.3d —, 1996 WL 614637 (4th Cir. 1996); *State v. Reichenberg,* 915 P.2d 14 (Idaho 1996); *State v. Kocher,* 542 N.W.2d 556 (Iowa 1996); *State v. Hanson,* 543 N.W.2d 84 (Minn. 1996); *State v. Mayo,* 915 S.W.2d 758 (Mo. 1996), *cert. denied,* — U.S. —, 117 S. Ct. 61 (1996); *State V. Gustafson,* 668 N.E.2d 435 (Ohio 1996); *State v. Hickman,* 668 A.2d 1321 (Conn. 1995), *cert. denied,* — U.S. —, 116 S. Ct. 1851 (1996); *State v. Higa,* 897 P.2d 928, 933 (Haw. 1995); *State v. Funke,* 531 N.W.2d 124, 126-27 (Iowa 1995); *State v. Jones,* 666 A.2d 128 (Md. 1995), *cert. denied,* — U.S. —, 116 S. Ct. 1265 (1996); *Luk v. Commonwealth,* 658 N.E.2d 664 (Mass. 1995); *State v. Savard,* 659 A.2d 1265, 1268 (Me. 1995); *State ex rel. Schwartz v. Kennedy,* 904 P.2d 1044 (N.M. 1995); *State v. Zimmerman,* 539 N.W.2d 49 (N.D. 1995).

*See also Butler v. Department of Pub. Safety & Corrections,* 609 So. 2d 790, 795-97 (acknowledging that while license suspension statute is to some extent deterrent and thus punitive, its primary effect is remedial); *State v. Strong,* 605 A.2d 510, 513-14 (Vt. 1992) (although there is an element of deterrence in the administrative license suspension provisions, it is not the primary purpose of the statutory scheme); *State v. O'Brien,* 609 A.2d 981 (Vt. 1992). *But see, People v. Uzquiano,* 642 N.Y.S.2d 769 (N.Y.Just. Ct. 1996); *Seven Hills v. Adkins,* 658 N.E.2d 828 (Ohio Mun. 1995).

Wis. Stat. § 343.305(8)(c)1 and 2. If the person is not happy with the circuit court decision, he or she may appeal to the court of appeals, and a person not happy with a municipal court determination may appeal to the circuit court. Wis. Stat. § 343.305(8)(c)3. Finally, any person who has his or her license administratively suspended under Wis. Stat. § 343.305 may apply for an occupational license at any time. Wis. Stat. § 343.305(8)(d). These protections indicate that the purpose of the statute is not to punish drunk drivers, but simply to keep drunk drivers off the roads for the safety and well-being of the general public.

As previously noted, the burden to rebut the presumption of constitutionality falls on *McMaster* in this case. In *Killebrew, Thierfelder, Kramsvogel*, and *Carpenter*, this court has rejected the defendants' challenges to civil statutes as violative of the Double Jeopardy Clause. In all of these cases, the court found that the defendant had failed to meet his or her burden of proving that the statute had a criminal or punitive purpose, nature, or effect. Just like the defendants in those cases, McMaster has "failed to show that the principal purpose of the statute [Wis. Stat. § 343.305] is punishment, retribution, or deterrence so as to render it punishment." *See Carpenter*, 197 Wis. 2d at 272. Further, McMaster has "failed to show that the statute has sufficient punitive characteristics" to take it out of the realm of a remedial civil sanction and to render it punishment. *See id.*

██

Based on a careful application of the two-prong *Ward* test, we conclude that the legislature intended Wis. Stat. § 343.305 to serve as a civil remedial sanction. We further conclude that the statute is not so punitive in effect and nature as to render it punish-

ment for purposes of a double jeopardy analysis. For these reasons, we affirm the court of appeals and hold that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution does not prohibit the criminal prosecution of the defendant for violations of Wis. Stat. §§ 346.63 and 346.65, subsequent to the administrative suspension of his driving privileges under Wis. Stat. § 343.305(7) and (8).

*By the Court.*—The decision of the court of appeals is affirmed.