STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael J. CARLSON, Defendant-Appellant.†

Court of Appeals

*No. 01–1088. Submitted on briefs October 15, 2001.—Decided December 19, 2001.*

2002 WI App 44

(Also reported in 641 N.W.2d 451.)

† Petition to review denied 4-22-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher A. Mutschler* of *Anderegg & Mutschler, LLP*, Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael E. O'Rourke* of *Green Lake District Attorney's Office*, Green Lake.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. Michael J. Carlson appeals a circuit court order finding "unreasonable"[1] his refusal to submit to a chemical test requested pursuant to Wis. Stat. § 343.305 (1999–2000).[2] Carlson seeks dismissal of his refusal conviction based on claims of procedural

---

[1] The test for a refusal under the implied consent law used to be "reasonableness." Wis. Stat. § 343.305(2)(b)5 (1975). However, the reasonableness test was eliminated in the late 1970's. Thereafter, the test has been whether the person has shown that the refusal was due to a physical inability to submit to the test. Wis. Stat. § 343.305(8)(b)2 (1977). That remains the test today. Wis. Stat. § 343.305(9)(a)5c (1999–2000). Despite this change, many lawyers and judges still harken back to the "reasonableness" language in implied consent cases. Most of the implied consent cases now use the words "proper" or "improper" when addressing a refusal instead of "reasonable" or "unreasonable"; we do so here.

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

WISCONSIN STAT. § 343.305 provides in relevant part:

(2) IMPLIED CONSENT. Any person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol. . . .

. . . .

(9) REFUSALS; NOTICE AND COURT HEARING. (a) If a person refuses to take a test . . . the law enforcement officer shall immediately take possession of the person's license and prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege. . . .

. . . .

(10) REFUSALS; COURT-ORDERED REVOCATION. (a) If the court determines under sub. (9)(d) that a person improperly refused to take a

error. First, he argues that the court lacked the authority to appoint, or to accept the appointment of, a special prosecutor in this case because the statute authorizing the use of special prosecutors is limited to cases that are not civil. Second, he argues that the refusal charge should be dismissed with prejudice because he was sanctioned for the refusal before his hearing was granted.

¶ 2. The facts are undisputed. Carlson was charged in Green Lake County for operating a motor vehicle while under the influence of an intoxicant contrary to WIS. STAT. § 346.63(1)(a). Subsequent to his arrest, Carlson allegedly refused a request by the arresting officer to provide a blood sample for chemical analysis pursuant to Wisconsin's implied consent law, WIS. STAT. § 343.305. Carlson then timely requested a hearing on whether his alleged refusal to submit to an implied consent test was improper. The trial court, however, denied the request as untimely on the grounds that it believed weekends and holidays were counted when determining whether a request for a hearing had been received within the statutorily allotted ten-day period. The trial court ordered revocation of Carlson's license to begin thirty days after the date of his refusal pursuant to § 343.05(10). Carlson's attorney filed a letter memorandum regarding the method for counting days under § 343.305(9), urging the court to reconsider its position. The court did not reverse itself.

test or if the person does not request a hearing within 10 days after the person has been served with the notice of intent to revoke the person's operating privilege, the court shall proceed under this subsection. If no hearing was requested, the revocation period shall begin 30 days after the date of the refusal. . . .

¶ 3. Shortly thereafter, the clerk of courts attended a seminar at which she learned that the method for counting elapsed days under the implied consent law previously suggested by Carlson's attorney was correct. The trial court then issued an order reversing its revocation order; at this point, Carlson's license had been revoked for a significantly brief period of time, nineteen days.

¶ 4. A hearing was held on November 27, 2000, regarding whether Carlson's alleged refusal to submit to chemical testing was improper. At the hearing, the State was represented by a special prosecutor, the City of Markesan City Attorney appointed by the trial court. Carlson objected to the court's assignment of a city attorney as a special prosecutor for the State of Wisconsin on the ground that the statute that permits the court to assign special prosecutors does not permit assignment in cases that are purely civil. Carlson objected to the assignment as a procedural issue, and as a remedy requested that the refusal charge be dismissed and that evidence of the refusal be suppressed at trial. The court denied Carlson's objection to the appointment stating that it was the "court['s] policy" to appoint the city attorney. Carlson raised a second procedural objection claiming that his due process rights were violated because he had been prejudiced by the court's erroneous decision to deny him a refusal hearing prior to his driver's license being revoked. As a remedy, he asked for dismissal of the refusal charge as well as suppression at trial. After considering both grounds for objection, the refusal hearing proceeded and the court found Carlson's refusal to be improper and resolved all other issues adversely to Carlson. Carlson appeals.

¶ 5. At the outset, we note that on appeal Carlson does not challenge the trial court's finding that his

refusal was improper. Rather, Carlson renews the two procedural challenges he made at the refusal hearing. First, he argues that the court lacked the authority to appoint a special prosecutor in this case because the statute authorizing the use of special prosecutors is limited to cases that are not civil. Carlson is incorrect. He calls to our attention only a part of the statute and, in so doing, he ignores that a complete reading gives the court almost unfettered authority to appoint a special prosecutor to perform "the duties of the district attorney." WIS. STAT. § 978.045(1r).

¶ 6. The construction of a statute and its application to undisputed facts are questions of law which we determine de novo. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 233, 568 N.W.2d 31 (Ct. App. 1997). The guiding principle in statutory construction is to discern legislative intent. *State v. Irish*, 210 Wis. 2d 107, 110, 565 N.W.2d 161 (Ct. App. 1997). We first look to the language of the statute itself and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986).

¶ 7. The authority to appoint a special prosecutor is derived from WIS. STAT. § 978.045, which provides in pertinent part:

> **(1g)** *A court on its own motion may appoint a special prosecutor under sub. (1r) or* a district attorney may request a court to appoint a special prosecutor under that subsection. . . .
>
>      . . . .
>
>    **(1r)** Any judge of a court of record, by an order entered in the record stating the cause therefor, may

appoint an attorney as a special prosecutor to perform, for the time being, or for the trial of the accused person, the duties of the district attorney. An attorney appointed under this subsection shall have all of the powers of the district attorney. The judge may appoint an attorney as a special prosecutor at the request of a district attorney to assist the district attorney in the prosecution of persons charged with a crime, in grand jury or John Doe proceedings or in investigations. . . . (Emphasis added.)

¶ 8. The plain language of WIS. STAT. § 978.045 authorizes two distinct ways in which a court may appoint a special prosecutor.[3] This is signified by the use of the word "or." Subsection (1g) states that a court may appoint a special prosecutor either on its own motion "*or*" when a district attorney makes a request that the court do so. Carlson directs us to the sentence in the statute that authorizes the court's appointment of a special prosecutor when it is at the request of a district attorney; this is but one of two authorized ways a court may appoint a special prosecutor. *See* § 978.045(1r). Carlson ignores the preceding sentence that authorizes the court to appoint a special prosecutor on its own motion. *See id.* We agree with Carlson that the part of the statute that he relies upon for his

[3] In *State v. Bollig*, 222 Wis. 2d 558, 570–71, 587 N.W.2d 908 (Ct. App. 1998), we stated that the purpose behind the different ways in which a special prosecutor may be appointed is targeted at controlling the Department of Administration (DOA) expenditures. We explained the significance of the two ways in which a special prosecutor can be appointed and specifically concluded that "the central purpose of appointments under § 978.045(1r) is to assure that the State will not have to pay for the services of a special prosecutor under circumstances not anticipated in the statute." *Bollig*, 222 Wis. 2d at 571.

argument lists, and arguably restricts, the circumstances in which a court may appoint a special prosecutor.[4] However, any restriction, if one exists, is triggered only when the appointment is made at the request of a district attorney, not when the appointment is made by a court on its own motion.[5]

¶ 9.   In the case at bar, the appointment was made by the court on its own motion. A plain reading of the statute tells us that when a court makes this appointment on its own motion, *all that is required* of the court is that it enter an order in the record "stating the cause therefor." WIS. STAT. § 978.045(1r). Then, the appointed special prosecutor may "perform, for the time being, or for the trial of the accused person, the duties of the district attorney. An attorney appointed under this subsection shall have all of the powers of the district attorney."[6] *Id.* In short, if a court makes a special prosecutor appointment on its own motion, it is constrained only in that it must enter an order in the

---

[4] The part of the statute that Carlson relies upon states: "The judge may appoint an attorney as a special prosecutor at the request of a district attorney to assist the district attorney in the prosecution of persons charged with a crime, in grand jury or John Doe proceedings or in investigations." WIS. STAT. § 978.045(1r).

[5] Because we find authority for the court's appointment elsewhere in the statute, we need not reach whether the listed circumstances, which relate back to the appointments made at the request of the district attorney, are meant to restrict the type of cases in which a court may appoint a special prosecutor when the appointment is made at the request of a district attorney.

[6] The district attorney is authorized to appear in all refusal hearings. WIS. STAT. § 978.05(6).

record stating the cause for the appointment. Here, the court fulfilled its duty by stating on the record that it was appointing a special prosecutor and giving its reasons why:

> The refusal hearing would normally be conducted by the district attorney. And we have run into problems in this county where that essentially vests the defense with two kicks at the same cat. And so as a matter of maintaining a fair playing field, we have simply requested . . . a special appointment so that the district attorney doesn't have to learn the whole case in order to go through a refusal hearing, only to turn the case back, if that's what the outcome is. So that's the court policy or practice. . . .

Thus, the court acted within its discretion when it appointed a special prosecutor to handle Carlson's refusal hearing.[7]

¶ 10.  Carlson's second argument is that the refusal charge should have been dismissed with prejudice because he was sanctioned for the refusal by having his license revoked for nineteen days before his hearing was granted. Carlson claims that we must reverse his conviction because the trial court made a "fundamental" error when it failed to grant him a predeprivation refusal hearing based upon its erroneous belief that his request for a hearing was untimely. In the alternative, Carlson argues that if we find that the trial court error was not fundamental but technical in nature, we should nonetheless reverse because he was prejudiced by the

---

[7] Because the central purpose of WIS. STAT. § 978.045 is to control the DOA's expenditures, an error in the appointment of a special prosecutor that does not impose unwarranted expenses upon the DOA results in no prejudice to the defendant and the trial court does not lose its competency to proceed. *See Bollig*, 222 Wis. 2d at 560.

error and therefore a sanction is in order for the technical error committed by the court. For the reasons set forth below, we do not dismiss.

¶ 11. At the threshold, Carlson is correct when he asserts that, once issued, a driver's license is considered a property interest under the protection of the Due Process Clause. *Bell v. Burson*, 402 U.S. 535, 539 (1971). As a general rule, due process requires that an individual be given notice and an opportunity to be heard before he or she may be deprived of his or her property. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

¶ 12. The analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), has long guided courts in their efforts to define appropriate due process protections. In *Eldridge*, the Supreme Court held that due process did not require that a hearing be held prior to the termination of Eldridge's disability benefits under the Social Security Act. *Id.* at 349. In its holding, the Court stated that there are three factors for consideration in determining when a prior hearing is required to afford due process:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

¶ 13. The *Eldridge* Court specifically stressed the truism that " 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* at 334 (citation omitted). Rather, explained the Court, "(d)ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citation omitted).

¶ 14. In two subsequent decisions, the Supreme Court applied the *Eldridge* factors in upholding the termination of driving privileges prior to a hearing. The first, *Dixon v. Love*, 431 U.S. 105 (1977), involved an Illinois truck driver, Dennis N. Love. *Id.* at 110. Love was initially suspended because of three traffic convictions within a twelve-month period. *Id.* He was suspended a second time for driving while his license was suspended and he was suspended a third time for three speeding convictions in a twelve-month period. *Id.* Upon the third suspension, his license was revoked under the Illinois Vehicle Code's provisions for having been suspended three times within a ten-year period. *Id.* at 111. Love did not request a postrevocation hearing; instead, he immediately filed suit claiming that he had a right to a prerevocation hearing. *Id.*

¶ 15. Especially relevant to our decision is the Supreme Court's holding in *Love* (after examining the three *Eldridge* factors) that a driver's license, though important, was "not so great as to require" a prerevocation evidentiary hearing. *Love*, 431 U.S. at 113. The Court held that the governmental interest for such a procedure of revocation was great. *Id.* at 115. Most important was the public interest in removing from the road drivers who were public hazards. *Id.*

574

¶ 16.   The second decision in which the Supreme Court applied the *Eldridge* factors, *Mackey v. Montrym*, 443 U.S. 1 (1979), involved a Massachusetts resident, Donald E. Montrym, whose driver's license was suspended for refusing to submit to a breath-analysis test. *Id.* at 5. In considering the first factor, the Court noted that the property interest (the driver's license) was the same as the interest involved in *Love*, and though there were some factual differences, they did not mandate a presuspension hearing. *Id.* at 11–12. Similarly, the governmental interest (the third factor) of highway safety was held to be at least the same as in *Love*. *Montrym*, 443 U.S. at 19.

¶ 17.   Indeed, it would appear that the governmental interest in *Montrym* was even greater than in *Love*. In *Montrym*, as in our case, the suspension involved an especially dangerous subgroup of unsafe drivers, drunken drivers. *See Montrym*, 443 U.S. at 4–5. The *Montrym* Court cited drunk driving fatality statistics for Massachusetts and stated:   "States surely have at least as much interest in removing drunken drivers from their highways as in summarily seizing mislabeled drugs or destroying spoiled foodstuffs." *Id.* at 17 (other situations justifying State action against property interests prior to a hearing).

¶ 18.   In its consideration of the second factor, the risk of erroneous deprivation, the *Montrym* Court went beyond the holding of *Love*. Whereas the risk of an erroneous deprivation was considered minimal in *Love* because the basis of the revocation was the presence of three suspensions on the licensee's record, the basis of the action in *Montrym* was the report of a police officer's observations. *Montrym*, 443 U.S. at 4–5. The evidence that was required for a licensee's suspension, the Court stated, was that "the driver has been arrested for

driving while under the influence of an intoxicant, probable cause exists for arrest, and the driver refuses to take a breath-analysis test." *Id.* at 13–14. In regard to the risk of error in the officer's determination, the Court said:

> The officer whose report of refusal triggers a driver's suspension is a trained observer and investigator. He is, by reason of his training and experience, well suited for the role the statute accords him in the presuspension process. And, as he is personally subject to civil liability for an unlawful arrest and to criminal penalties for willful misrepresentation of the facts, he has every incentive to ascertain accurately and truthfully report the facts.

*Id.* at 14. The Court concluded that the risk of error in the presuspension procedures was not so substantial as to deny the licensee due process of law. *Id.* at 15.

¶ 19. With these Supreme Court cases in mind, we turn to Carlson's second argument: that the refusal charge should be dismissed with prejudice because he was sanctioned for the refusal before his hearing was granted. The question presented is whether, after weighing the *Eldridge* factors and taking into account the trial court error, should Carlson's refusal charge be dismissed with prejudice.

¶ 20. We first consider the *Eldridge* factors. The initial step in the balancing process mandated by *Eldridge* is identification of the nature and weight of the private interest affected by the official action challenged. Here, as in *Love* and *Montrym*, the private interest affected is the granted license to operate a motor vehicle. The Supreme Court recognized in *Love* and reiterated in *Montrym* that the driver's interest in the continued possession and use of his or her license is a substantial one, and a licensee is not made entirely

whole if his or her suspension or revocation is later vacated. *Love*, 431 U.S. at 113; *Montrym*, 443 U.S. at 11. Nonetheless, the Court concluded that the nature of the private interest is not so great as to *require* an evidentiary hearing prior to revocation or suspension. *Love*, 431 U.S. at 113.

¶ 21. Here, the official action challenged is the trial court's prehearing revocation of Carlson's license, which was based on the trial court's erroneous belief that Carlson had failed to timely request a hearing. Carlson served a brief nineteen-day revocation of his driver's license before the trial court recognized its error and immediately acted to vacate its revocation order and grant Carlson a hearing. Although Carlson cannot be made entirely whole, having been erroneously deprived of his property interest for nineteen days, we do not believe under these facts that the nature or the weight of the private interest involved compels us to reach a different result than the Supreme Court did in *Love* and *Montrym*.

¶ 22. The second stage of the *Eldridge* inquiry requires consideration of the likelihood of an erroneous deprivation of the private interests involved as a consequence of the procedures used. The Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible property interest be so comprehensive as to preclude any possibility of error. *Montrym*, 443 U.S. at 13. We recognize that Carlson was briefly erroneously deprived of his driver's license; however, we nonetheless believe that there is *in general* a low possibility of an erroneous deprivation of the private interests involved as a consequence of the procedures used. The procedure that requires a defendant to request a hearing within ten days or be revoked is

reasonable and we hold that the risk that a court will improperly calculate the ten days and thus deprive a defendant of private interests as a consequence of the procedures used is not significant, even though it happened here.

¶ 23.   The third leg of the *Eldridge* balancing test requires us to weigh the governmental interest with the procedures used. The governmental interest, as in *Love* and *Montrym*, is highway safety. More specifically, as in *Montrym*, the safety hazard is drunk drivers. The Wisconsin Supreme Court has stated on many occasions that the purpose behind WIS. STAT. § 343.305 is "to facilitate the identification of drunken drivers and their removal from the highways." *State v. McMaster*, 206 Wis. 2d 30, 46, 556 N.W.2d 673 (1996). It is clear that a serious threat to human life and well-being is posed by drunk drivers. Drunk driving and its consequences represent one of our society's gravest problems. "[T]he general purpose behind laws relating to operating while under the influence of intoxicants is 'to get drunk drivers off the road as expeditiously as possible and with as little possible disruption of the court's calendar.' " *Id.* (citation omitted). A summary revocation of driving privileges if a hearing is not timely requested, *even with the risk of procedural error in determining the timeliness of a request,* serves the purpose of deterring drunk driving and removing drunk drivers from public roads. Therefore, the application of the statute to Carlson was not contrary to the governmental interests.

¶ 24.   We now address the fact that the trial court erred in its original order to deny Carlson a hearing and revoke his license. In this case, we first determine whether the error was a "fundamental error" or merely

a "technical error." *See State v. Gautschi*, 2000 WI App 274, ¶ 9, 240 Wis. 2d 83, 622 N.W.2d 24, *review denied,* 2001 WI 15, 241 Wis. 2d 211, 626 N.W.2d 808 (Wis. Feb. 7, 2001) (No. 99–3065). Whether a defect is fundamental or technical is a question of law that we review de novo. *Id.* If the error is merely technical, we look to see whether the party was prejudiced by the error. *Id.* If the defect is fundamental, however, whether the party was prejudiced is irrelevant. *Id.* [8]

---

[8] We couch our discussion in terms of "fundamental error" and "technical error" to correspond with Carlson's argument that the trial court made a "fundamental error" when it failed to grant him a predeprivation hearing. In so doing, we recognize that in the context of whether a court has acquired personal jurisdiction over a party, there is an important distinction between a "fundamental error" and a "technical error"—"where a defect prevents the purpose of the statute from being served" it is a "fundamental error." *State v. Gautschi*, 2000 WI App 274, ¶ 11, 240 Wis. 2d 83, 622 N.W.2d 24. In the context of our discussion, we use "fundamental" to describe a basic or elementary error and "technical" to describe an insignificant or trifling error. We do not imply that the failure of the circuit court to give Carlson a predeprivation hearing divested the court of personal jurisdiction over Carlson.

We also point out that neither the State nor Carlson adequately discussed the remedy available when a party is denied a predeprivation hearing. Contrary to Carlson's argument that he is entitled to a reversal of the order finding his refusal to be unreasonable, all he is entitled to is a postdeprivation hearing, which he received in this case. Procedural due process requires nothing more than the opportunity to be heard at a meaningful time in a meaningful manner. *State v. Nordness*, 128 Wis. 2d 15, 32–34, 381 N.W.2d 300 (1986).

¶ 25. To determine whether an error is technical or fundamental, we look to the purpose of the statute, not just its wording. *Id.* at ¶ 11. If the purpose of the rule was fulfilled, the defect was not fundamental but technical. *Id.* The statute at issue is WIS. STAT. § 343.305. Again, we emphasize that the Wisconsin Supreme Court has stated on many occasions that the purpose behind § 343.305 is "to facilitate the identification of drunken drivers and their removal from the highways." *McMaster*, 206 Wis. 2d at 46. "[T]he general purpose behind laws relating to operating while under the influence of intoxicants is 'to get drunk drivers off the road as expeditiously as possible and with as little possible disruption of the court's calendar.'" *Id.* (citation omitted).

¶ 26. The general purpose of the statute was fulfilled; the court's action went to the purpose of the statute and sought to remove a potential drunk driver from the road as expeditiously as possible and with as little possible disruption of the court's calendar. The court determined that Carlson had not made a timely request for a prerevocation hearing and ordered that his license be revoked. *See* WIS. STAT. § 343.305(10). In fact, Carlson had made a timely request. Carlson's license was revoked for nineteen days before the trial court recognized its error.

¶ 27. We conclude that even though Carlson was improperly revoked for nineteen days, this revocation was due to a technical error on the trial court's part which, when recognized, was immediately addressed by the trial court. Further, after Carlson was afforded a prerevocation hearing, the court found that he refused to submit to the chemical test as the law mandates, and

580

based on the improper refusal, the court revoked Carlson's operating privileges for one year. The trial court made every effort to give Carlson the process due him when it vacated its initial revocation and granted Carlson "an opportunity to be heard at a meaningful time and in a meaningful manner." *See State v. Moline*, 170 Wis. 2d 531, 541, 489 N.W.2d 667 (Ct. App. 1992). Keeping in mind the dictate that due process is "flexible and calls for such procedural protections as the particular situation demands," we hold that in this *particular situation,* the error was technical and nonprejudicial. *See Eldridge*, 424 U.S. at 334.

*By the Court.*—Order affirmed.