STATE of Wisconsin, Plaintiff-Respondent,

v.

Lance Terry KONRATH, Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–1261–CR. Oral argument February 20, 1998.—Decided May 22, 1998.*

(Also reported in 577 N.W.2d 601.)

For the defendant-appellant-petitioner there were briefs by *Ralph A. Kalal* and *Kalal & Associates*, Madison and oral argument by *Ralph A. Kalal*.

For the plaintiff-respondent the cause was argued by *James M. Freimuth*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. N. PATRICK CROOKS, J. This case is on review from an unpublished decision of the court of appeals[1] affirming a judgment of the circuit court. The Waukesha County Circuit Court, Joseph E. Wimmer, Judge, denied Lance Terry Konrath's (Konrath) motion to vacate the order for seizure of his motor vehicle in accord with Wis. Stat. § 346.65(6) (1993–94),[2] resulting from Konrath's fifth conviction for operating a motor vehicle under the influence of an intoxicant contrary to Wis. Stat. § 346.63(1)(a).

¶ 2. In his motion to vacate the seizure order, Konrath raised three constitutional challenges to the impending seizure and possible forfeiture of his motor vehicle. First, Konrath argued that Wis. Stat. § 346.65(6) violates Article I, section 12 of the Wiscon-

---

[1] *State v. Konrath*, No. 96–1261-CR, unpublished slip op. (Wis. Ct. App. Dec. 11, 1996).

[2] All future references to the Wisconsin Statutes will be to the 1993–94 volume of the statutes.

sin Constitution by permitting forfeiture of estate because the statute does not require a nexus between the motor vehicle and the crime from which the seizure and forfeiture result.[3] Second, Konrath argued that § 346.65(6) violates the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution by permitting successive punishments because the statute does not require a nexus between the motor vehicle and the crime from which the seizure and forfeiture result.[4] Third, Konrath argued that § 346.65(6) violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution by its failure to provide notice and hearing prior to seizure of the motor vehicle or a prompt post-deprivation hearing.[5]

---

[3] Article I, section 12 of the Wisconsin Constitution states:

No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed, and no conviction shall work corruption of blood or forfeiture of estate.

[4] The Fifth Amendment to the United States Constitution states, in relevant part:

[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.

The Fourteenth Amendment to the United States Constitution states, in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law.

[5] The Fifth Amendment to the United States Constitution states, in relevant part:

[N]or [shall any person] be deprived of life, liberty, or property, without due process of law.

¶ 3. In its response to Konrath's motion, the State did not address Konrath's constitutional claims but instead objected to the timeliness of the motion. The State argued in part that Konrath's motion had been brought pursuant to Wis. Stat. § 974.06.[6]

¶ 4. The circuit court determined that Konrath had not specifically sought relief under Wis. Stat. § 974.06, and that the motion could not be brought in accord with § 974.06 in any event because that statutory section applies to appeals and post-conviction relief for a prisoner in custody. The circuit court dismissed Konrath's motion to vacate the seizure order because it was untimely under Wis. Stat. § 974.02[7] and no appeal had been taken from the original sentence. Konrath appealed.

¶ 5. The court of appeals affirmed the circuit court's order denying Konrath's motion to vacate the seizure order. The court of appeals concluded that

---

[6] Wisconsin Stat. § 974.06(1) states:

After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court or a person convicted and placed with a volunteers in probation program. . .claiming the right to be released upon the ground that the sentence was imposed in violation of the U. S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

[7] Wisconsin Stat. § 974.02(1) states, in relevant part:

A motion for postconviction relief other than under s. 974.06 by the defendant in a criminal case shall be made in the time and manner provided in ss. 809.30 and 809.40. An appeal by the defendant in a criminal case from a judgment of conviction or from an order denying a postconviction motion or from both shall be taken in the time and manner provided in ss. 808.04(3), 809.30 and 809.40.

Konrath had failed to raise his constitutional claims through a timely appeal from the judgment of conviction in accord with Wis. Stat. § 974.02. The court of appeals noted that the forfeiture proceeding, which would commence after seizure of the motor vehicle, would afford Konrath another opportunity to raise any constitutional challenges to the seizure and forfeiture.

¶ 6. We conclude that Konrath lacks standing to assert a claim of forfeiture of estate as prohibited by Article I, section 12 of the Wisconsin Constitution. Wisconsin Stat. § 346.65(6) is constitutional as applied to Konrath, since the forfeiture is civil in nature and there is a nexus between the motor vehicle to be seized and forfeited and the crime. Because § 346.65(6) is constitutionally applied to Konrath, and his claims do not implicate the First Amendment to the United States Constitution, Konrath may not assert a facial overbreadth challenge that § 346.65(6) may be unconstitutionally applied in instances not presently before this court.

¶ 7. Similarly, Konrath lacks standing to assert a violation of the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 8 of the Wisconsin Constitution.[8] The forfeiture of Konrath's motor vehi-

_____

[8] At the circuit court, Konrath did not argue that Wis. Stat. § 346.65(6) violates the double jeopardy clause of the Wisconsin Constitution. *See* Wis. Const. art. I, § 8, cl. 1. In his brief to this court, Konrath first states that § 346.65(6) "violates the Double Jeopardy Clauses of the federal *and Wisconsin* constitutions." (Emphasis supplied.) We will generally not consider arguments raised for the first time on appeal. *See Gorton v. American Cyanamid Co.*, 194 Wis. 2d 203, 226–27 n.10, 533 N.W.2d 746 (1995). However, our analysis of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is simi-

cle under Wis. Stat. § 346.65(6) is an in rem civil forfeiture. In rem civil forfeitures are distinct from punishment for a criminal offense and, therefore, the Double Jeopardy Clause prohibiting multiple punishments is inapplicable. Thus, since § 346.65(6) is constitutional as applied to Konrath, and his claims do not implicate the First Amendment to the United States Constitution, Konrath lacks standing to assert a facial overbreadth challenge that § 346.65(6) may be unconstitutionally applied in instances not presently before this court.

¶ 8. Finally, we reject Konrath's claim that his rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 1 of the Wisconsin Constitution have been violated.[9] Wisconsin Stat.

---

larly applicable to an analysis of the double jeopardy clause of the Wisconsin Constitution. *See State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809 (1980). Therefore, our federal constitutional analysis necessarily encompasses a determination of the state constitutional challenge.

[9] At the circuit court, Konrath argued that Wis. Stat. § 346.65(6) violates the Due Process Clause of the United States Constitution, but did not argue a violation under the Wisconsin Constitution. *See* Wis. Const. art. I, § 1. In his brief to this court, Konrath argues that he has been deprived of "due process of law" without specifically referencing the United States or Wisconsin Constitutions. Assuming Konrath is now asserting a state constitutional challenge, we note that we will generally not consider arguments raised for the first time on appeal. *See Gorton*, 194 Wis. 2d at 226–27 n.10. However, our analysis of the deprivation of due process under the federal constitution governs both constitutions as " '[i]t is well settled by Wisconsin case law that the various freedoms preserved by sec. 1. art I, Wis. Const., are substantially the equivalent of the due process. . .clause[ ] of the Fourteenth amendment to the United

346.65(6) sets forth procedural due process protections including providing notice of the seizure and a hearing prior to forfeiture of the motor vehicle. Moreover, Konrath was notified of the impending seizure and possible forfeiture on several occasions. Such notification included written notice in the complaint, the amended complaint, the second amended complaint, and the judgment of conviction. Konrath was also notified orally at the status conference, as well as at the plea and sentencing hearing. In addition, Konrath had an opportunity to be heard at the status conference and the plea and sentencing hearing before the circuit court. At each of these hearings, the circuit court directly discussed seizure and forfeiture of the motor vehicle and Konrath had an opportunity to respond. Furthermore, this case presents the limited extraordinary circumstances under which immediate seizure of Konrath's motor vehicle is constitutionally permissible without preseizure notice and hearing. After Konrath's motor vehicle is seized,[10] he will again be provided notice of the seizure, and a forfeiture hearing will be held at which time Konrath will be given yet another opportunity to be heard on any claims in relation to the seizure and forfeiture of his motor vehicle.

## A.

¶ 9. The facts are undisputed for purposes of our review. On November 15, 1993, the State filed a complaint charging Konrath with four counts of criminal

States constitution.' " *Martin v. Richards*, 192 Wis. 2d 156, 198 n.6, 531 N.W.2d 70 (1995) (quoted source omitted).

[10] At the time of oral argument, counsel for both parties acknowledged that the seizure order has not yet been effectuated, since the Town of Pewaukee Police Department had been unable to locate Konrath's motor vehicle.

298

conduct, namely: (1) operating a motor vehicle while under the influence of an intoxicant (fifth offense) contrary to Wis. Stat. § 346.63(1)(a); (2) operating a motor vehicle with a prohibited alcohol concentration (fifth offense) contrary to Wis. Stat. § 346.63(1)(b); (3) operating a motor vehicle after license revocation (third offense) contrary to Wis. Stat. § 343.44(1), and; (4) fleeing from a traffic officer contrary to Wis. Stat. § 346.04(3).[11]

¶ 10. Pursuant to a negotiated plea agreement, Konrath pled guilty to the count of operating a motor vehicle while intoxicated (fifth offense) and to the count of fleeing a traffic officer. In exchange, the State moved to dismiss the charges of operating a motor vehicle with a prohibited alcohol concentration and operating a motor vehicle after revocation.[12]

¶ 11. The plea and sentencing hearing was held on June 9, 1995. Prior to the entry of his plea, the circuit court engaged in a lengthy colloquy with Konrath to ensure that Konrath understood the nature of the charges and the potential penalties associated with pleading guilty. As part of this dialogue, Konrath indicated to the circuit court that he was aware that pleading guilty to operating while intoxicated as a fifth offense would result, in part, in seizure and forfeiture

---

[11] The State filed an amended complaint on February 23, 1994, and a second amended complaint on February 10, 1995, both of which restated the same four charges.

[12] The State also agreed to recommend a $2,000 fine, a three-year license revocation and a one-year jail sentence on the count of operating a motor vehicle while intoxicated, and to recommend a $2,000 fine, a concurrent six-month license revocation and concurrent six-month jail sentence on the count of fleeing a traffic officer.

of Konrath's motor vehicle in accord with Wis. Stat. § 346.65(6).

THE COURT: Have you gone over–have you received an [sic] a copy of the criminal complaint?

DEFENDANT KONRATH: Yes, I have.

THE COURT: Have you gone over the potential penalties of each of those particular offenses with your attorney?

DEFENDANT KONRATH: Yes.

THE COURT: You are aware of all the potential penalties, is that correct?

DEFENDANT KONRATH: Yes.

THE COURT: That includes now, the fact that you're aware of forfeiture of a vehicle?

DEFENDANT KONRATH: Yes.

¶ 12. The circuit court accepted Konrath's guilty plea and convicted him of the counts of operating a motor vehicle while intoxicated and fleeing a traffic officer. With respect to the charge of operating while intoxicated, the circuit court imposed a fine of $2,000 plus costs, revocation of Konrath's license for three years, alcohol assessment, and a 12-month jail term. In addition, the circuit court ordered "that a vehicle be forfeited pursuant to the statute." The judgment of conviction was entered on June 9, 1995. The judgment stated in part that the "court orders that a vehicle be forfeited."

¶ 13. On June 17, 1995, the circuit court entered a written order for seizure of Konrath's motor vehicle, namely, the 1988 Pontiac Firebird that had been identified in the complaint and the amended complaints as the vehicle Konrath had been driving during the incident from which the charged offenses arose. Konrath brought a motion to vacate the seizure order, arguing that the order was unconstitutional because it resulted

in forfeiture of estate, because it subjected him to double jeopardy, and because his procedural due process rights had been violated.

¶ 14. As set forth previously in this opinion, the circuit court denied Konrath's motion on procedural grounds. The circuit court first concluded that the motion did not qualify as a post-conviction motion pursuant to Wis. Stat. § 974.06. The circuit court also concluded that the motion was untimely because it was not filed within the time limitations for a direct criminal appeal pursuant to Wis. Stat. § 974.02. Finally, the circuit court concluded that the forfeiture procedure to be commenced under Wis. Stat. § 346.65(6) included the seizure of Konrath's motor vehicle, and that Konrath would have the opportunity to raise any constitutional challenges to the seizure and forfeiture of the motor vehicle at the forfeiture hearing. Konrath appealed.

¶ 15. The court of appeals affirmed the judgment of the circuit court on the same procedural grounds. The court of appeals determined that Konrath had not timely raised the constitutional challenges to Wis. Stat. § 346.65(6) through an appeal of the judgment of criminal conviction in accord with Wis. Stat. § 974.02. Furthermore, because the forfeiture proceeding in accord with § 346.65(6) had not yet commenced, Konrath would have another opportunity to raise any constitutional challenges to the seizure and forfeiture of his motor vehicle at that time.

B.

¶ 16. Each of Konrath's claims raises an issue of whether Wis. Stat. § 346.65(6) is constitutional. Constitutional challenges to a statute present questions of

law which we review de novo. *See Matter of Estate of Barthel,* 161 Wis. 2d 587, 592, 468 N.W.2d 689 (1991). A statute is afforded a presumption that it is constitutional. *See State v. Carpenter,* 197 Wis. 2d 252, 263, 541 N.W.2d 105 (1995). In challenging the constitutionality of a statute, a party has the burden of proving that the statute is unconstitutional beyond a reasonable doubt. *See id.*

¶ 17. Konrath first argues that Wis. Stat. § 346.65(6) is unconstitutional because it allows forfeiture of estate without requiring a nexus between the crime and the motor vehicle to be seized and forfeited. The relevant language of Wis. Stat. § 346.65(6) states:

> (a)2. The court shall order a law enforcement officer to seize a motor vehicle owned by a person. . .who commits a violation of s. 346.63(1)(a) or (b). . .if the person. . .who is convicted of the violation has 3 or more prior suspensions, revocations or convictions within a 10-year period that would be counted under s. 343.307(1).
>
> . . .
>
> 2m. A person who owns a motor vehicle subject to seizure. . .shall surrender to the clerk of circuit court the certificate of title issued under ch. 342 for every motor vehicle owned by the person. The person shall comply with this subdivision within 5 working days after receiving notification of this requirement from the district attorney. . . .The notification shall include the time limits for that surrender, the penalty for failure to comply with the requirement and the address of the clerk of circuit court. . . .
>
> 3. The court shall notify the department. . .that an order. . .to seize a motor vehicle has been entered. The registration records of the department shall

reflect that the order has been entered against the vehicle and remains unexecuted. Any law enforcement officer may execute that order. . . .

. . .

(b) Within 10 days after seizing. . .a motor vehicle under par. (a), the law enforcement agency that seized. . .the vehicle shall provide notice of the seizure. . .by certified mail to the owner of the motor vehicle and to all lienholders of record. . . .

(c) The district attorney of the county where the motor vehicle was seized shall commence an action to forfeit the motor vehicle within 30 days after the motor vehicle is seized. The action shall name the owner of the motor vehicle and all lienholders of record as parties. The forfeiture action shall be commenced by filing a summons, complaint and affidavit of the law enforcement agency with the clerk of circuit court. Upon service of an answer, the action shall be set for hearing within 60 days after the service of the answer.

¶ 18. Konrath asserts that the statutory language is unconstitutional because the legislature's use of the phrase "*a* motor vehicle" in Wis. Stat. § 346.65(6)(a)2 means that "*any* motor vehicle" owned by an individual subject to the statute may be seized and forfeited, regardless of whether the motor vehicle was the particular vehicle utilized during the offense. Konrath contends, however, that "[t]he forfeiting of property which is related to the commission of a crime, either as fruit, instrumentality, or as contraband, could be justified, in either the civil forfeiture or criminal forfeiture contexts, by the *nexus* between the criminal act and the forfeited property." Pet. brief at 24.

¶ 19. Konrath concedes that the motor vehicle subject to the seizure order, and possible forfeiture, in

the present case is the motor vehicle that he was operating during the incident from which the criminal charges resulted. Nevertheless, Konrath argues that Wis. Stat. § 346.65(6) is unconstitutional. At oral argument, Konrath's counsel stated that "[a] statute which requires no nexus is forfeiture of the estate, *whether or not* it happens that the targeted forfeiture is an instrumentality because the sole authority to forfeit is statutory." (Emphasis supplied.) It is mere "coinciden[ce] in this case [that the State] is pursuing the vehicle that was used."

¶ 20. Before we may analyze Konrath's constitutional claim, we must identify the type of statutory challenge he is asserting. A party may challenge the constitutionality of a statute on its face, or a party may challenge the constitutionality of a statute as applied to that party under the facts presented in a given case.[13] *See* Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 236 (1994). One type of facial challenge involves asserting that a statute is unconstitutional because it is overbroad. *See New York v. Ferber*, 458 U.S. 747, 768 n.21 (1982). A statute is considered to be "overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to conduct which the state

---

[13] The difference between challenging the constitutionality of a statute on its face and challenging it as applied is important. "If a court holds a statute unconstitutional on its face, the state may not enforce it under any circumstances, unless an appropriate court narrows its application; in contrast, when a court holds a statute unconstitutional as applied to particular facts, the state may enforce the statute in different circumstances." Michael C. Dorf, *Facial Challenges to State and Federal Statues*, 46 Stan. L. Rev. 235, 236 (1994).

is not permitted to regulate." *City of Milwaukee v. Wilson*, 96 Wis. 2d 11, 19, 291 N.W.2d 452 (1980).

¶ 21. With the exception of a challenge under the First Amendment to the United States Constitution, a party does not have standing to raise a facial challenge that a statute is overbroad.[14] *See Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 959 (1984). The United States Supreme Court has stated that "[t]he fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salerno*, 481 U.S. 739, 745 (1987).[15] *See also, Massachusetts v. Oakes*, 491

---

[14] The First Amendment to the United States Constitution states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

A facial overbreadth challenge to the constitutionality of a statute, if premised upon an alleged First Amendment violation, "is justified only by the recognition that free expression may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988).

[15] In *United States v. Salerno*, 481 U.S. 739, 745 (1987), the United States Supreme Court noted that a facial challenge to a statute is extremely difficult "since the challenger must establish that no set of circumstances exists under which the [statute] would be valid." However, in subsequent cases, the United States Supreme Court has not consistently applied the "no set of circumstances" language. *See Janklow v. Planned*

U.S. 576, 581 (1989) (concluding that as a general rule "a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others").

¶ 22. As stated, Konrath argues that Wis. Stat. § 346.65(6) permits forfeiture of estate because it does not require a nexus between the crime and the motor vehicle to be seized and forfeited. However, he concedes that the application of the statute to him in the present case involves seizure and possible forfeiture of a motor vehicle that is directly connected to the crime of driving under the influence of an intoxicant. He is not arguing that the statute is unconstitutional as it is applied to the particular set of facts presented in this case. Rather, he is arguing that the statute itself—on its face—is unconstitutional because although its language may encompass seizure and forfeiture of a motor vehicle used in a crime, the statute does not require a nexus between the motor vehicle to be seized and forfeited and the crime. Essentially, he is arguing that § 346.65(6) is "so sweeping" that it not only permits seizure and forfeiture of a criminally connected motor vehicle, but permits seizure and forfeiture of any motor vehicle, regardless of whether it is connected to any criminal activity. *See, e.g., Wilson*, 96 Wis. 2d at 19. Konrath's constitutional challenge to § 346.65(6) is, therefore, one of facial overbreadth. *See id.* Accordingly, if the statute is constitutional as applied to him, he has no standing. *See Salerno*, 481 U.S. at 745; *State v. Lee*, 192 Wis. 2d 260, 270, 531 N.W.2d 351 (Ct. App. 1995).

---

*Parenthood Sioux Falls Clinic,*— U.S. —, 116 S. Ct. 1582, 1583 n. 1 (1996) (Mem.) (citing cases where the United States Supreme Court has not consistently applied the "no set of circumstances" language set forth in *Salerno*).

¶ 23. In *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135 (1996), the United States Supreme Court considered the forfeiture of property used to facilitate an illegal drug transaction under a federal statute providing for such forfeiture. The Supreme Court noted that "[since] the earliest years of this Nation, [the Government has been authorized] to seek parallel in rem civil forfeiture actions and criminal prosecutions based upon the same underlying events." *Id.* at 2140. The legal theory behind in rem civil forfeiture is that it is the property that has committed the crime and is therefore found guilty. *See id.* at 2141.

¶ 24. In *Ursery* the Supreme Court applied a two-prong test to determine whether the forfeiture statute at issue allowed for in rem civil forfeiture or whether the statute was criminal in nature and imposed punishment. *See id.* at 2142. First, the Supreme Court attempted to discern congressional intent by analyzing traditional in rem civil forfeitures, the range of property to which the statute was applicable, and the remedial nature of the statute. *See id.* at 2147. Second, the Supreme Court looked to whether there was "clear[ ] proof" that the purpose and actual effect of the forfeiture statute was so punitive as to negate any congressional intent to establish an in rem civil forfeiture. *See id.* at 2148.[16]

---

[16] This court has previously adopted and applied the two-prong test set forth in *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135 (1996). In *State v. McMaster*, 206 Wis. 2d 30, 43, 556 N.W.2d 673 (1996), this court concluded that "the best way to determine whether a statute is criminal and punitive, or civil and remedial, is through an analysis under the two-prong [ ] test as advocated by the Supreme Court in. . .*Ursery*." A "court must consider 1) whether the legislature intended [the statute] to be a remedial civil sanction, and 2) whether there are aspects

¶ 25. In this case, there is no need to engage in the in-depth two-prong analysis set forth in *Ursery* to determine whether seizure and forfeiture of Konrath's motor vehicle pursuant to Wis. Stat. § 346.65(6) constitutes an in rem civil forfeiture proceeding. Konrath concedes that the constitutionality of an in rem civil forfeiture is characterized by the nexus between the property and the crime. *See* Pet. reply brief at 12. Konrath also conceded at oral argument that the motor vehicle subject to the seizure and possible forfeiture in this case is the motor vehicle identified in the complaint as the motor vehicle he was driving at the time of the incident at issue. Because there is a nexus between the motor vehicle and Konrath's commission of the offense of driving while under the influence of an intoxicant, this proceeding is an in rem civil forfeiture proceeding. Therefore, the seizure and forfeiture under § 346.65(6) is constitutional as applied to Konrath.

¶ 26. Notwithstanding our determination that an analysis under the two-prong *Ursery* test is not necessary here, we conclude that Wis. Stat. § 346.65(6) constitutes a remedial in rem civil forfeiture proceeding even under *Ursery* given the facts in this case.

¶ 27. With respect to the first prong of the *Ursery* test, we conclude that the legislative history of Wis. Stat. § 346.65(6) evinces that the legislature intended seizure and forfeiture to be remedial. The original draft of the statute provided that any vehicle in which the statutory violation was committed was subject to seizure and forfeiture. *See* 1991 S.B. 308. A subsequent

of [the statute] that are so punitive either in effect or nature as to render the overall purpose to be one of punishment." *Id.* at 43–44.

308

letter from the Legislative Fiscal Bureau to the Joint Committee on Finance dated March 12, 1992, which in turn referenced a memo prepared by the Department of Transportation, stated in part that approximately "85% of [drivers who violated] OWI and implied consent [laws] were driving their own vehicles when stopped." Based upon this data, the report estimated that "7,126 repeat offenders were driving their own vehicle[s] when a second or subsequent offense occurred."

¶ 28. With the benefit of the data from the DOT, the legislature ultimately chose to target a motor vehicle owned by the offender. As stated, the majority of repeat drunk driving offenders are driving their own vehicles at the time of the offense. Seizing and forfeiting a vehicle owned by a repeat drunk driving offender is the legislature's attempt to remove from the offender's use a vehicle that has the highest probability of being used in any future offense. This decision is consistent with the primary purpose of the statute, which is to keep the highways safe and protect the public. *Cf. State v. McMaster*, 206 Wis. 2d 30, 45, 556 N.W.2d 673 (1996) (license suspension and revocation for violations of Wis. Stat. § 346.63(1) intended as "a civil remedial sanction[s] to protect innocent people on the highways").[17]

---

[17] Wisconsin Stat. § 346.65(6) excludes "innocent owners." Under the language used in the statute, only a vehicle owned by the offender is subject to seizure and forfeiture, even if the offender was driving a motor vehicle owned by an individual other than him/herself at the time of the offense. We are not persuaded that this renders § 346.65(6) punitive in nature as to the offender. In *Van Oster v. State of Kansas*, 272 U.S. 465, 467 (1926), the United States Supreme Court recognized that "a state in the exercise of its police power may forfeit property used

¶ 29. Our conclusion that the legislature intended Wis. Stat. § 346.65(6) to be remedial is not altered by the fact that legislature used the term "penalty" in Wis. Stat. § 346.65. The term "penalty" may be used to reference "both criminal and civil sanctions" and is not solely indicative of a legislative intent to create a criminal sanction. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364 n.6 (1984).

¶ 30. Applying the second prong of the *Ursery* test to the facts of the present case, we conclude that the motor vehicle seizure and forfeiture in accord with Wis. Stat. § 346.65(6) is not so punitive in effect as to render the statutory purpose one of punishment. The vehicle subject to seizure and potential forfeiture in the present case is the vehicle Konrath was driving at the time he was stopped and cited for violations of Wis. Stat. § 346.63(1). We agree with other jurisdictions that have determined that seizure and forfeiture of a motor vehicle used by a repeat drunk-driving offender at the time of the offense does not render the seizure and forfeiture proceeding punitive in nature.[18] *See,*

---

by its owner in violation of state laws." (citations omitted). Subjecting an innocent owner's property to seizure and forfeiture merely "builds a secondary defense against a forbidden use" of the property. *Id.* The Wisconsin Legislature's decision to exclude this "secondary defense," however, does not necessarily evince a punitive intent. Statutory in rem forfeiture, even though civil and remedial in nature, generally serves a punitive purpose in part. *See, e.g., Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686–87 (1974). Any attendant punitive purpose served by § 346.65(6) does not outweigh the legislature's intent to serve the remedial purpose of keeping Wisconsin's highways safe by targeting motor vehicles generally used in drunk driving offenses.

[18] We emphasize that our analysis regarding the second prong of *Ursery* is based upon the facts presented in this case.

*e.g., City of Pine Springs v. One 1992 Harley Davidson,*
555 N.W.2d 749, 751–52 (Minn. Ct. App. 1996); *Davis
v. Municipality of Anchorage,* 945 P.2d 307, 310
(Alaska Ct. App. 1997). Thus, even under an analysis of
the *Ursery* test, the seizure and possible forfeiture in
the present case is an in rem civil forfeiture proceeding
that is remedial in its purpose and effect.

██

¶ 31. Konrath's claim that Wis. Stat. § 346.65(6)
permits forfeiture of estate does not implicate the First
Amendment to the United States Constitution. Accordingly, Konrath has no standing to assert a facial
overbreadth challenge to § 346.65(6) as permitting forfeiture of estate. *See Salerno,* 481 U.S. at 745; *Lee,* 192
Wis. 2d at 270.

## C.

¶ 32. Konrath next argues that Wis. Stat.
§ 346.65(6) violates the Double Jeopardy Clause
because the statute permits multiple punishments for
his criminal offense by providing for seizure and forfeiture of a motor vehicle without requiring a nexus
between the criminal conduct and the motor vehicle to
be seized and forfeited. As stated, he argues that
§ 346.65(6) permits seizure and forfeiture of any motor
vehicle owned by an individual subject to the statute.

¶ 33. Notwithstanding Konrath's argument to
the contrary, we conclude that his double jeopardy
argument is also one of facial overbreadth. Konrath
implicitly concedes that Wis. Stat. § 346.65(6) as

---

Although we conclude the Wisconsin Legislature intended
seizure and forfeiture under Wis. Stat. § 346.65(6) to be remedial, the actual effect of the proceeding may arguably be
punitive in a situation where the targeted motor vehicle is not
the motor vehicle that was used in the crime.

applied in this case involves in rem civil forfeiture by stating that "[c]ivil in rem forfeiture. . .requires a *nexus* between the unlawful act and the property." Pet. brief at 34. However, he argues that although there is a nexus between the motor vehicle and the crime in the present case, the language of § 346.65(6) on its face permits seizure and forfeiture of a motor vehicle regardless of whether there is a nexus. His double jeopardy challenge does not implicate the First Amendment to the United States Constitution. Therefore, if the statute is constitutional as applied to him, he has no standing. *See Salerno*, 481 U.S. at 745.

¶ 34. In *Ursery*, the United States Supreme Court recognized that it had on numerous occasions "considered the application of the Double Jeopardy Clause to civil forfeitures, [and] consistently conclud[ed] that the Clause does not apply to such actions because they do not impose punishment." 116 S. Ct. at 2140. An in rem civil forfeiture, as distinct from a criminal forfeiture, is "a proceeding in rem to forfeit property used in committing an offense." *Id.* at 2141.

> "This forfeiture proceeding. . .is in rem. It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted, and punished. The forfeiture is no part of the punishment for the criminal offense. The provision of the Fifth Amendment to the Constitution in respect of double jeopardy does not apply."

*Id.* at 2140 (quoting *Various Items of Personal Property v. United States*, 282 U.S. 577, 581 (1931)).

¶ 35. Konrath agrees that an in rem civil forfeiture proceeding is characterized by the nexus between the property and the crime. The motor vehicle seizure and forfeiture in accord with Wis. Stat. § 346.65(6) as applied to Konrath is an in rem civil forfeiture because it is a proceeding to seize and forfeit the property used in the commission of the crime, namely, operating the motor vehicle while under the influence of an intoxicant. The Double Jeopardy Clause is inapplicable to in rem civil forfeiture proceedings because in rem civil forfeiture proceedings do not impose punishment. *See Ursery*, 116 S. Ct. at 2141. Hence, as applied to Konrath, § 346.65(6) does not violate the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. "[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally." *Lee*, 192 Wis. 2d at 270. As such, Konrath lacks standing to assert a facial challenge to Wis. Stat. § 346.65(6)(a)2 as violative of the Double Jeopardy Clause.[19]

---

[19] Konrath argues that even if Wis. Stat. § 346.65(6) required a nexus between the crime and the motor vehicle, he would still assert a violation of the Double Jeopardy Clause because § 346.65(6) requires a criminal conviction prior to forfeiture. Konrath's argument is not well-developed, and he cites no authority in support of his argument. Konrath is apparently arguing that the forfeiture is criminal punishment regardless of whether there is a nexus, because the forfeiture of property is premised on "the status of its owner, rather than by virtue of its use." Pet. brief at 34.

Konrath correctly asserts that it is the property to be seized and forfeited that is guilty in an in rem civil forfeiture proceeding, not the charged defendant. *See Bennis v. Michigan*, 516 U.S. 442, 446–49 (1996). Nevertheless, in many cases at com-

**D.**

¶ 36. Finally, Konrath argues that Wis. Stat. § 346.65(6) permits an unconstitutional deprivation of property without due process of law because it does not require notice of the seizure and an opportunity to be heard, nor does it require a prompt post-deprivation hearing.[20] Due process generally "requires that notice and an opportunity to be heard be provided before a

---

mon law, " 'the right of forfeiture did not attach until the offending person had been convicted. . .' In other words, at common law, not only was it the case that a criminal conviction did not bar a civil forfeiture, but, in fact, the civil forfeiture could not be instituted unless a criminal conviction had already been obtained." *Ursery*, 116 S. Ct. at 2141 (citing *Various Items of Personal Property v. United States*, 282 U.S. 577 (1931)). It is not necessary that the defendant be found guilty of criminal conduct beyond a reasonable doubt prior to the State initiating an in rem civil forfeiture proceeding. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984). However, there must be some finding by the trier of fact regarding the existence of a crime, either by proof beyond a reasonable doubt in the criminal proceeding or by a preponderance of the evidence in the forfeiture proceeding. *See Dowling v. United States*, 493 U.S. 342, 349 (1990) (citing *89 Firearms*, 465 U.S. at 361). The Wisconsin Legislature's decision to require an underlying conviction prior to seizure and forfeiture does not render Wis. Stat. § 346.65(6) unconstitutional.

[20] We reach Konrath's constitutional due process claim without consideration of any potential procedural time bars because the State does not argue that this court should adopt the reasoning of the court of appeals. That is, the State does not argue that Konrath's challenge to the seizure was untimely under Wis. Stat. § 974.02, nor does the State argue that any constitutional challenge to the forfeiture of the motor vehicle is premature. At oral argument, this court engaged in the follow-

constitutional [property] deprivation occurs." *Irby v. Macht*, 184 Wis. 2d 831, 843, 522 N.W.2d 9 (1994).

¶ 37. Wisconsin Stat. § 346.65(6) contemplates notice and a hearing, and there are several procedural due process protections set forth in the language of the statute. For example, under § 346.65(6)(a)2m, the district attorney is required to notify an individual whose motor vehicle is subject to seizure and possible forfeiture that the individual must "surrender to the clerk of circuit court the certificate of title" for every motor vehicle owned by the individual. Pursuant to § 346.65(6)(a)2, the circuit court may not order a motor vehicle to be seized until an individual has been convicted of an underlying statutory violation. In addition, in accord with § 346.65(6)(b) and (c), an individual must receive written notice of the seizure within 10 days of the seizure, and the district attorney has 30 days to commence a forfeiture action in which a hearing shall be held.

¶ 38. Konrath was provided sufficient notice of the impending seizure and possible forfeiture of his motor vehicle, and was also afforded an opportunity to assert any challenges. The original complaint, as well

ing discussion with the assistant attorney general representing the State:

> CHIEF JUSTICE ABRAHAMSON: You're not saying the court should not entertain it [i.e. the constitutional claims]?
> ASST. ATTORNEY GENERAL: That's correct.
> CHIEF JUSTICE ABRAHAMSON: You're not supporting the court of appeals' decision?
> ASST. ATTORNEY GENERAL: That's correct.
> . . .
> CHIEF JUSTICE ABRAHAMSON: Your [response to the] petition for review said though that you did agree with the court of appeals. . . .The State's position is not that any longer, I gather?
> ASST. ATTORNEY GENERAL: That's correct.

as the amended complaint and the second amended complaint, all provided written notice that "a vehicle owned by the defendant shall be seized and forfeited, pursuant to Section 346.65(6)(a)2 and (c), Wisconsin Statutes." At the status conference on June 9, 1995, Konrath was orally notified by the circuit court that "the potential penalties that would be involved in this particular case includ[e] the fact that a car shall be seized and forfeited," and he had an opportunity to raise any challenges. Thereafter, at the plea and sentencing hearing, the circuit court again provided oral notice to Konrath by asking him if he was "aware [that] forfeiture of a vehicle" was a potential penalty for pleading guilty to the charge of operating a motor vehicle while under the influence of intoxicants. Konrath responded "yes" to the circuit court's inquiry and had an opportunity to raise any challenges. The judgment of the circuit court also provided written notice that the "Court orders a vehicle be forfeited."[21] Konrath therefore had ample notice and opportunity to raise a challenge to the circuit court regarding the seizure and possible forfeiture of his motor vehicle.

¶ 39. Although Konrath was provided adequate notice and an opportunity to be heard pursuant to Wis.

---

[21] Although the judgment of conviction ordered that a motor vehicle be "forfeited" as opposed to "seized," it is evident that the circuit court intended that the motor vehicle be seized and forfeited in accord with Wis. Stat. § 346.65(6). The complaint, amended complaint, and second amended complaint all indicated that a motor vehicle "shall be seized and forfeited." The circuit court indicated to Konrath at the status conference that a motor vehicle "shall be seized and forfeited," and the circuit court discussed "forfeiture pursuant to the statute" at the plea and sentencing hearing which necessarily includes seizure as part of the statutory proceeding.

Stat. § 346.65(6), we additionally recognize that there are limited circumstances under which "immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974). In *Calero-Toledo*, the United States Supreme Court addressed a due process challenge to a Puerto Rican statute that allowed for immediate seizure of a yacht that was used to transport a controlled substance. *See id.* at 665–66. The Puerto Rican government had seized the yacht without prior notice to its owner or a prior adversary hearing. *See id.* at 667.

¶ 40. In addressing the due process challenge in *Calero-Toledo*, the Supreme Court considered three circumstances that must be present before immediate seizure of property may be constitutionally permissible.

> Such circumstances are those in which 'the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a governmental official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.'

*Id.* at 678 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 91 (1972)). Concluding that these elements had been met, the *Calero-Toledo* Court reasoned:

> First, seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert in rem jurisdiction over the property in order to conduct forfeiture pro-

ceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions. Second, preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized— as here, a yacht—will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given. And finally. . .seizure is not initiated by self-interested parties; rather, Commonwealth officials determine whether seizure is appropriate under the provisions of the Puerto Rican statutes. In these circumstances, we hold that this case presents an 'extraordinary' situation in which postponement of notice and hearing until after seizure did not deny due process.

*Calero-Toledo*, 416 U.S. at 679–80.

¶ 41. We conclude that the elements discussed in *Calero-Toledo* for immediate seizure have also been met in this case. First, as in *Calero-Toledo*, the State is attempting to seize Konrath's motor vehicle in conjunction with an in rem civil forfeiture proceeding, thereby serving the public interest of impeding any further illegal use of the motor vehicle. Second, as in *Calero-Toledo*, preseizure notice and hearing may frustrate the purpose served by Wis. Stat. § 346.65(6) because the motor vehicle is mobile. This concern is particularly evident in the present case since the Pewaukee Police Department has been unable to locate Konrath's motor vehicle to effectuate the seizure. Third, as in *Calero-Toledo*, this case is not one in which a private party is trying to seize property. Rather, governmental officials are attempting to seize Konrath's vehicle in accordance with the provisions of § 346.65(6). Thus, this case presents the extraordinary limited circumstances under which immediate seizure is constitutionally per-

missible without preseizure notice and hearing. Within 10 days after the motor vehicle is seized, Konrath will be provided notice of the seizure, and a forfeiture action will be commenced and set for a hearing. *See* Wis. Stat. § 346.65(6)(b) and (c).

¶ 42. Because Wis. Stat. § 346.65(6) provides procedural due process protections, and because Konrath was afforded notice, both written and oral, that his motor vehicle would be seized and forfeited, and because he was provided an opportunity to be heard, we reject his claim that his due process rights under the Fifth Amendment to the United States Constitution have been violated. *See Irby*, 184 Wis. 2d at 843. In addition, this case presents the limited extraordinary circumstances under which immediate seizure of Konrath's motor vehicle is constitutionally permissible without preseizure notice and hearing. *See Calero-Toledo*, 416 U.S. at 679–80.

### E.

¶ 43. In sum, we conclude that Konrath lacks standing to assert a claim of forfeiture of estate as prohibited by Article I, section 12 of the Wisconsin Constitution. Wisconsin Stat. § 346.65(6) is constitutional as applied to Konrath since the forfeiture is civil in nature and there is a nexus between the motor vehicle to be seized and forfeited and the crime. Because his claims do not implicate the First Amendment to the United States Constitution, Konrath may not assert a facial overbreadth challenge that § 346.65(6) may be unconstitutionally applied in instances not presently before this court.

¶ 44. Similarly, Konrath lacks standing to assert a violation of the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States

Constitution and Article I, section 8 of the Wisconsin Constitution. The forfeiture of Konrath's motor vehicle under Wisconsin Stat. § 346.65(6) is an in rem civil forfeiture. In rem civil forfeitures are distinct from punishment for a criminal offense and, therefore, the Double Jeopardy Clause prohibiting multiple punishments is inapplicable. Since his claims do not implicate the First Amendment to the United States Constitution, Konrath lacks standing to assert a facial overbreadth challenge that § 346.65(6) may be unconstitutionally applied in instances not presently before this court.

¶ 45. Finally, we reject Konrath's claim that his rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 1 of the Wisconsin Constitution have been violated. Wisconsin Stat. § 346.65(6) sets forth procedural due process protections. Konrath was notified in writing and orally of the impending seizure and possible forfeiture on several occasions. Konrath was also given an opportunity to be heard at the status conference and the plea and sentencing hearing before the circuit court. Furthermore, this case presents the limited extraordinary circumstances under which immediate seizure of Konrath's motor vehicle is constitutionally permissible without preseizure notice and hearing in any event.

¶ 46. We emphasize that our holding is premised on the facts presented in this case. Here, Konrath concedes that there is a nexus between the motor vehicle to be seized and possibly forfeited and the offense of operating the motor vehicle while under the influence of an intoxicant. The nexus in the present case is essential to our holding that Wis. Stat. § 346.65(6) is constitutional as applied to Konrath and does not con-

stitute forfeiture of estate or subject him to multiple punishments. Our holding does not encompass cases where the motor vehicle to be seized and forfeited is not the motor vehicle involved in the charged offense. Although we do not decide this issue, absent a nexus between the motor vehicle and the crime, we recognize that compelling constitutional challenges could be raised.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). There is no question that repeat drunk driving is a grave offense that demands drastic societal measures. There is also no question that the legislature may authorize forfeiture of a vehicle in cases of operating a vehicle while under the influence of an intoxicant. The legislature, however, may not adopt an unconstitutional method to provide for forfeiture of a vehicle in repeat drunk driving cases. In my opinion the legislature, in enacting Wis. Stat. § 346.65(6), unfortunately has done just that.

¶ 48. Wisconsin Stat. § 346.65(6) provides that after a conviction of operating a vehicle while under the influence, the State may seize "a motor vehicle. . .owned by" the convicted driver. It is undisputed that under § 346.65(6) the vehicle seized need not be the vehicle driven by the offender during the drunk driving offense.

¶ 49. The defendant argues that Wis. Stat. § 346.65(6) creates criminal punishment and thus permits a successive prosecution and punishment in

violation of the double jeopardy clauses of the federal and Wisconsin Constitutions.[1]

¶ 50. The majority opinion concludes that "Wis. Stat. § 346.65(6) constitutes a remedial *in rem* civil forfeiture proceeding even under *Ursery* given the facts in this case" and that the double jeopardy bar is, therefore, inapplicable. Majority op. at 308.[2]

---

[1] The double jeopardy clauses of the federal and Wisconsin Constitutions prohibit successive punishments for the "same offense." *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *State v. Kurzawa*, 180 Wis. 2d 502, 525, 509 N.W.2d 712 (1994). That is, the double jeopardy bar prevents the state from "attempting a second time to punish criminally for the same offense." *United States v. Ursery*, 518, U.S. 267, 116 S. Ct. 2135, 2139–40 (1996) (internal citations omitted).

[2] The majority opinion concludes that because Wis. Stat. § 346.65(6) is constitutional as applied to the defendant, he has no standing to bring a facial challenge to the statute. *See* majority op. at 306. The majority opinion cites *United States v. Salerno*, 481 U.S. 739, 745 (1987), which requires a showing that "no set of circumstances exists under which the [statute] would be valid."

I conclude that standing is not a barrier to deciding the constitutionality of the statute. The continued vitality of the *Salerno* standard has been called into question. *See Washington v. Glucksberg*, 117 S. Ct. 2258, 2304–05 (1997) (Stevens, J., concurring) (noting that appropriate standard to be applied in facial challenges to state statutes has been the subject of debate within the Supreme Court and that the Court has never applied *Salerno* standard, even in *Salerno* itself); *Kraft Gen. Foods, Inc. v. Iowa Dept. of Revenue and Finance*, 505 U.S. 71, 82 (1992) (Rehnquist, C.J., dissenting) (unsuccessfully arguing for the application of the *Salerno* standard in facial challenge to state tax statute); *Jane L. v. Bangerter*, 102 F.2d 1112, 1116 (10th Cir. 1996) (noting that the Court did not apply *Salerno* standard to facial challenge of abortion regulation statute in *Planned Parenthood v. Casey*, 505 U.S. 833 (1992)); Michael C. Dorf,

¶ 51. *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 2145 (1996), sets forth a two-part test to determine whether a statute is a civil *in rem* forfeiture proceeding or criminal punishment under double jeopardy analysis: (1) Did the legislature intend the forfeiture proceeding to be civil? (2) If so, is there the "clearest proof" that the forfeiture proceeding is so punitive in form and effect as to render the proceeding criminal despite the legislature's intent to the contrary? *See Ursery*, 116 S. Ct. at 2147.

¶ 52. I agree with Justice Stevens that the *Ursery* Court's distinction between civil *in rem* forfeitures and civil *in personam* penalties is "pedantic" and does not lend itself to easy understanding by legislatures drafting forfeiture statutes or courts interpreting such statutes. *Ursery*, 116 S. Ct. at 2160 (Stevens, J., concurring in part and dissenting in part). The *Ursery* Court did not engage in extensive statutory construction and thus left many questions unanswered about how courts are to determine whether a statute provides for a valid civil *in rem* forfeiture. I interpret and apply *Ursery* as best as I can, relying on the two-part test and the classification of *in rem* proceedings and *in personam* proceedings discussed in the Supreme Court cases.[3]

---

*Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 239–40 (1994) (asserting that the Court inconsistently applies *Salerno* and fails to articulate why it departs from *Salerno*).

[3] *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984); *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972); *Various Items of Personal Property v. United States*, 282 U.S. 577 (1931).

¶ 53. I dissent because I conclude that Wis. Stat. § 346.65(6) imposes criminal punishment for double jeopardy purposes.

¶ 54. The first question to be answered under the *Ursery* two-part test is whether the legislature intended the forfeiture under Wis. Stat. § 346.65(6) to be civil or criminal. *See Ursery*, 116 S. Ct. at 2147.

¶ 55. The majority opinion concludes that the legislature chose to target a motor vehicle owned by the offender and that the legislature, therefore, intended "to remove from the offender's use a vehicle that has the highest probability of being used in any future offense." Majority op. at 309. The majority opinion characterizes the legislative intent as remedial.

¶ 56. The majority opinion reaches this conclusion by examining a Department of Transportation fiscal report stating that 85 percent of drunk drivers were driving their own cars when stopped by the police. Adopting one of the State's positions, the majority opinion reasons that "[i]n light of legislative awareness that vehicle 'ownership' and 'use' tend to go hand in hand, the legislative decision to link forfeiture with ownership and not purely use suggests that 'punishment' of the offender was not the 'principal' purpose of sec. 346.65(6)." Brief for State at 34. Thus the majority opinion concludes that the legislature intended the statute to be remedial by making it harder for drunk drivers to have vehicles to drive.[4]

¶ 57. The majority opinion's reasoning presents several problems. First, the majority opinion fails to confront *Ursery* and the line of Supreme Court cases

---

[4] The State acknowledges that 15 percent of drunk driving offenders "would be at risk each year for mandatory forfeiture of a vehicle not being driven at the time of the offense." Brief for State at 34 n.9.

dealing with civil *in rem* forfeitures. *Ursery* and the other cases make clear that in a civil *in rem* forfeiture proceeding the property to be seized is, "by resort to a legal fiction," the defendant in the case, and the issue to be tried is whether the property is "guilty [of a crime] and condemned." *Ursery*, 116 S. Ct. at 2140 (quoting *Various Items of Personal Property v. United States*, 282 U.S. 577, 581 (1931)).[5] The theory underlying a civil *in rem* forfeiture is that the property in question committed the crime and is, therefore, subject to punishment and forfeiture. *See Ursery*, 116 S. Ct. at 2145. Civil forfeiture is "designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct." *Ursery*, 116 S. Ct. at 2145.

¶ 58. In contrast, a forfeiture that is characterized as criminal is designed to impose punishment on the wrongdoer. The owner of the property, who has been convicted of an offense, is stripped of his or her property as punishment for the offense. In many situations, confiscating property used in a crime and punishing and deterring the wrongdoer are overlapping legislative purposes.

¶ 59. In this case the legislature did not authorize the seizure of property "guilty of a crime" but instead authorized seizure of the offender's property to

_____

[5] The reasoning of the *Ursery* Court, however, is not entirely clear. While discussing at length prior Supreme Court cases that resorted to the legal fiction that the property is held guilty and condemned, the majority opinion also stated, in response to Justice Stevens's concurring/dissenting opinion, that the Court does not rest its "conclusion in this case [*Ursery*] upon the long-recognized fiction that a forfeiture *in rem* punishes only malfeasant property rather than a particular person." *Ursery*, 116 S. Ct. at 2148 n.3.

deter and punish the offender by confiscating a vehicle that might be used in a future offense. Under Wis. Stat. § 346.65(6) a nexus exists between the seized property and the offender, but not between the seized property and the specific crime committed.[6]

¶ 60. Thus the statute in issue in this case is significantly different from the statutes discussed in *Ursery* and the prior Supreme Court cases. The majority opinion in this case concedes that "absent a nexus between the motor vehicle and the crime,. . .compelling constitutional claims could be raised." Majority op. at 320–21.

¶ 61. Second, the majority opinion's characterization of the legislative intent contravenes the text and legislative history of Wis. Stat. § 346.65(6). I conclude, as did the State, that the text and legislative history are ambiguous as to the legislative intent.

¶ 62. The majority opinion omits any discussion of the statutory text in discerning the legislature's intent. The text of Wis. Stat. § 346.65(6) refers to "a motor vehicle. . .owned by" the convicted drunk driver, not the vehicle driven by the driver. The text of § 346.65(6) is silent as to legislative intent. The State's brief acknowledges that "there is no clear expression of legislative intent in the language of sec. 346.65(6), Stats., and the provision reflects a mixture of traditionally civil and criminal features." Brief for State at 31.

---

[6] The majority opinion attempts to salvage Wis. Stat. § 346.65(6) by stating that the statute is remedial because it excludes "innocent owners." Majority op. at 309–10 n.17. The fact that the statute excludes "innocent owners" does not save the statute from being constitutionally infirm since it still permits *in rem* seizure of "innocent vehicles" (vehicles owned by the convicted driver but not used in the drunk driving offense).

¶ 63. If the legislature had intended Wis. Stat. § 346.65(6) to be remedial, it would have written the statute to permit seizure of *the* motor vehicle owned *and driven* by the convicted driver at the time of the drunk driving offense. But the legislature did not write the statute this way, and the court should not interpret the statute to mean what the legislature did not say.[7]

¶ 64. Finally, the majority opinion's conclusion about legislative intent contradicts the legislative history. The State's brief concedes that the legislative history "reflects mixed remedial and punitive goals." Brief for State at 32. The majority opinion selectively ignores portions of the legislative history. The full legislative history reveals that the legislature considered limiting forfeiture to the vehicle driven by the convicted driver but chose not to do so. The drafting file contains several memoranda discussing the choice between forfeiture of the vehicle driven by the convicted driver and forfeiture of a vehicle owned by the convicted driver. An early draft of Wis. Stat. § 346.65(6) provided for seizure of "the motor vehicle in which the violation. . .was committed if the person convicted of that violation has 3 or more prior convictions in a 5-year period." A staff member of then-Senator Lynn Adelman, a sponsor of the bill, asked that this language be amended so that "[o]nly vehicles *owned* by

---

[7] The majority opinion asserts that "the primary purpose of the statute. . .is to keep the highways safe and protect the public" and cites to *State v. McMaster*, 206 Wis. 2d 30, 45, 556 N.W.2d 673 (1996), as support for this legislative purpose. Majority op. at 309. *McMaster* involved Wis. Stat. § 343.305, an entirely different statute, and provides for *in personam* penalties in relation to intoxication tests. The majority opinion makes a large, unsupported leap by equating the legislative purpose of § 343.305 with the legislative purpose of Wis. Stat. § 346.65(6).

327

the offender would be subject to confiscation, not necessarily the car being driven by the offender."

¶ 65. I conclude that because Wis. Stat. § 346.65(6) permits seizure of a vehicle owned by the convicted driver, regardless of whether the vehicle was used to commit the offense, the legislature directed the statute to the person of the convicted driver and intended to deter and punish the driver; the legislature did not direct the forfeiture toward "the guilty property."

¶ 66. I therefore conclude under the first part of the *Ursery* test that the legislature did not intend Wis. Stat. § 346.65(6) to be a civil *in rem* forfeiture statute directed to the "guilty property." Because I conclude § 346.65(6) is not a civil *in rem* forfeiture statute, I need not, and do not, reach the second part of the *Ursery* test.

¶ 67. The only remaining question is whether a vehicle forfeiture proceeding under Wis. Stat. § 346.65(6) is a successive proceeding or part of the drunk driving prosecution. The State concedes that "it is not clear whether the legislature intended sec. 346.65(6), Stats, to be part of the original criminal prosecution (as an adjunct to sentencing) or to be a totally independent proceeding, because the provision contains a hybrid of criminal and civil features." Brief for State at 24.

¶ 68. Wisconsin Stat. § 346.65(6)(c) provides that "[t]he district attorney of the county where the motor vehicle was seized shall commence an action to forfeit the motor vehicle within 30 days after the motor vehicle is seized. . . . The forfeiture action shall be commenced by filing a summons, complaint and affidavit of the law enforcement agency with the clerk of circuit court." Wis. Stat. § 346.65(6)(c). On balance

§ 346.65(6)(c) seems to make the vehicle forfeiture proceeding a separate proceeding from the criminal prosecution. I, therefore, conclude that vehicle forfeiture under § 346.65(6) following a criminal conviction violates the double jeopardy bar against successive punishments.

¶ 69. For the reasons set forth, I dissent.

¶ 70. I am authorized to state that Justice Ann Walsh Bradley joins this opinion.